McKINLEY (UNITED STATES v.). See Case No. 15,694.

McKINNEY (DART v.). See Case No. 3,583.

McKINNEY (FARMERS' LOAN & TRUST CO. v.). See Case No. 4,667.

McKINNEY (HOW v.). See Case No. 6,749.

## Case No. 8,865.

### McKINNEY v. NEIL.

[1 McLean, 540.] [1]

Circuit Court, D. Ohio. July Term, 1840.

CARRIERS—STAGE COACH—UPSETTING—INJURY TO PASSENGER — PRESUMPTION — WANT OF SKILL — NEGLIGENCE — DAMAGES — IMPEACHING WITNESS.

1. A stage proprietor is bound to furnish good coaches, gentle and well broke horses, good har-

[1] [Reported by Hon. John McLean, Circuit Justice.]

ness. and a prudent and skilful driver; and should a passenger receive an injury from any defect in this preparation, the proprietor is liable.

[Cited in Frink v. Coe, 4 G. Greene, 557.]

2. The upsetting of a stage is prima facie evidence of negligence; and a passenger who has been injured need show nothing more to sustain his action.

[Cited in Frink v. Coe, 4 G. Greene, 558. 560; Sherlock v. Alling. 44 Ind. 204; Lemon v. Chanslor. 68 Mo. 356; Ryan v. Gilmer, 2 Mont. 517. Cited in note to Memphis & O. R. P. Co. v. McCool, 83 Ind. 398.]

3. It will then be incumbent on the defendant to show. by way of reducing the damages. or in bar of the action, the circumstances of the case.

[Cited in Frink v. Coe, 4 G. Greene. 560.]

4. The defendant is not responsible for casualties which could not be foreseen nor guarded against. But he is liable for the smallest degree of negligence or want of care in the driver, or for his want of skill.

[Cited in Lusby v. Atchison, T. & S. F. Ry. Co., 41 Fed. 185.]

[Cited in Frink v. Coe, 4 G. Greene. 557; Galena & C. U. R. Co. v. Yarwood. 15 Ill. 471; Galena & C. U. R. Co. v. Fay, 16 Ill. 567. Cited in brief in Huelsenkamp v. Citizens' Ry. Co.. 37 Mo. 544. Cited in New Orleans, I. & G. N. R. Co. v. Allbritton, 38 Miss. 242; Taylor v. Grand Trunk Ry. Co., 48 N. H. 316. Cited in note to Twomley v. Central Park. etc., R. Co.. 69 N. Y. 159. Cited in Treadwell v. Whittier, 80 Cal. 589, 22 Pac. 271; Memphis & O. R. P. Co. v. McCool, 83 Ind. 398. Cited in brief in Le Barron v. East Boston Ferry Co., 93 Mass. (11 Allen) 314.]

5. If the driver leave the common track and take one not used. which increases the risk, it is evidence of negligence.

6. Want of skill in the driver, being a material fact in the cause, may be proved as any other fact. In this respect the driver stands in a different relation from a witness. whose general character only can be impeached.

7. A witness cannot be impeached by proving that at other times he made contradictory statements. unless he shall be interrogated as to such statements.

[Cited in U. S. v. Dickinson. Case No. 14.958; Conrad v. Griffey. 16 How. (57 U. S.) 47.]

[Cited in Sutton v. Reagan. 5 Blackf. (Ind.) 220. Cited in brief in Jarboe v. Keoler, 8 Ind. 315.]

8. But where an ex parte deposition of a witness was read, of the taking of which no notice was given, under the act of congress, and under the peculiar circumstances of the case, the court permitted contradictory statements to be proved.

[Cited in Howland v. Conway. Case No. 6.793.]

[This was an action by Adam McKinney against William Neil to recover damages for personal injuries sustained in an accident alleged to have been caused by the negligence of the defendant.]

Messrs. Ewing and Stansbury, for plaintiff.

Messrs. Wright and Wilcox, for defendant.

OPINION OF THE COURT. The defendant, in connection with others, is an extensive stage proprietor, and runs the lines of stages from Columbus to Zanesville, in this state. The plaintiff being a passenger in one of these lines, through the negligence and want of skill of the driver, as he alleges, the stage was upset, and he was severely injured. For this injury, the loss of time and expense, this action was brought. It was proved that the plaintiff being in Columbus on the evening of the 18th December, 1838, took a seat for the next morning's stage to Zanesville, at the stage office, and paid the usual fare of four dollars and fifty cents. At the time this was done the agent or clerk, in the office, informed him that he would have to occupy an outside seat. The stage left Columbus for Zanesville the next morning at ten o'clock, and proceeded on the national road about thirty-five miles, to near Linnville, where, at the foot of a hill the stage upset and the injury complained of was done. When the stage left Columbus there were nine passengers inside, and two, the plaintiff being one of them, on the outside with the driver. At Reynoldsburgh, the first place of change, one of the inside passengers left the stage. And at Jack-town, there being another passenger, it was suggested to the plaintiff that. being the sixth person entered, he had a right to take his seat inside of the coach, which he declined doing. The route of the driver complained of commenced at Etna, and it was observed by several of the passengers, that he drove very fast. After a short delay at Jack-town, the driver continued on his route at the same rapid rate. Near the summit of the hill at the foot of which the misfortune occurred, the driver passed on the right-hand side of a two horse wagon of Mr. Hampden, a witness, who was driving the same direction as the stage. Hearing the approach of the stage, Mr. Hampden turned his horses to the left, which gave to the stage more than half the road. It passed without coming in contact with the wagon. and the witness observed that all the horses except one, which was a very fast trotter, were in full gallop. The stage had a patent lock or rubber, but the driver, instead of using the lock to retard the progress of the stage, in descending the hill, applied the whip twice within the observation of the witness. The hill was between a quarter and a half mile long. After passing Mr. Hampden's wagon, the horses ran to the verge of the right hand side of the road; they then inclined to the left. The plaintiff and his fellow passenger on the outside, Thompson, remonstrated with the driver more than once; and requested him to use the lock; but he refused to do so, telling them there was no danger. The horses continued their direction to the left, until the near wheels of the stage ran off the paved road a foot or two, and continued so to run some two or three rods, when the horses turned to the right, and the stage upset with great violence. The ground where this occurred was nearly level. The off-wheels ran on the paved road, but the descent was small from the paved to the unpaved part of the

road, and with ordinarily good driving, the coach could have been in no danger of upsetting where it did upset. A moment before the stage turned over, one of the inside passengers observed they were going over. At this time the speed of the horses was about as great as it had been. When the stage turned over it became uncoupled, and the horses ran off with the fore-wheels. The plaintiff was picked up about a rod behind the stage body, shockingly mangled. His head was cut in several places, but the principal wound was in his left limb. The back part of his thigh was much lacerated, and from the knee down there was a severe contusion. From the manner of the injury, it it probable that he attempted to jump from the stage, the top of which must have fallen on his limb, as the left leg of his pantaloons was much torn. An attempt was made to remove him to Linnville, a short distance, but he could not bear the motion; and he was taken into a house at hand, where he remained under the care of a physician and nurses for three months, before he was able to be removed to his brother's, in Delaware. Forty-eight hours transpired before the physician could produce a reaction of the system, during which time his extremities were cold, and a sense of shivering pervaded his system. He also suffered under a delirium the greater part of the time. The flesh on his leg mortified and fell off, so as to expose the muscles, which were also much injured. The plaintiff being present, his leg was examined by physicians, in the presence of the jury. It has yet acquired but little strength, and is much smaller than the other; and it is the opinion of the physician that it will never become sound and strong. The plaintiff offered to prove a want of skill in the driver, by showing that at one time his lines were not properly fastened on his horses, and at another time he handled them unskilfully, and was near upsetting the stage.

To this evidence the defendant's counsel objected, on the ground that the plaintiff may prove the general character of the driver, but cannot show his incompetency or want of skill by proving particular facts. If in this respect the driver stands in the same relation as a witness, it is very clear that the inquiry must be limited to general character, and cannot go as to particular facts. This rule is founded in justice. A witness is brought before the court and is required to testify. And if his testimony shall be impeached, it would be most unjust to discredit him by the proof of particular facts, of which he has had no notice, and against which he cannot be expected to be prepared to defend himself. But as every man is presumed to be ready at all times to defend his general character, on this ground he may be impeached. A driver, as such, may have a general character. But the driver in question was a stranger, had been on the route only three or four days, and had established

no general character. This, it is admitted, in the case of a witness, could have no influence on the general rule. But may not a distinction be drawn, in this respect, between the character of a driver and that of a witness? A driver is a voluntary agent, and professes to have skill in driving; and he is employed in a business, which, for the safety of passengers, requires firmness and a high degree of skill. He is charged with a want of experience and skill, and how are these to be proved? May they not be proved by persons skilled in driving, and who have observed him drive? If, for instance, he is so ignorant of the duties he assumes to perform, as not to know how to harness the horses, or to handle the lines, may the fact not be shown? In what way could his incompetency be more satisfactorily established? His skill as a driver is often the gist of the action; and it is involved in the present case. In this view, he does not stand in the relation of a witness whose credibility is attempted to be impeached; but he stands in the place of the defendant, who is answerable for his want of skill and negligence.

The question of skill is the point in issue, and is not collateral. May it not then be shown by proof of the fact, the same as any other material fact in the case? It is admitted that proof of negligence at any other time would not be proper, as it would not conduce to establish negligence at the time of the injury. But this is not the case as it regards a want of skill. Proof of this a few days or hours before the stage was upset, may have some important bearing, in the opinion of the jury, on the conduct of the driver at the time of the injury. If a few days before the occurrence, the driver showed himself to be ignorant of the common duties of a driver, it is not at all probable, that in so short a time he could have acquired the necessary skill and experience; and if for the want of these the stage was upset, the defendant is liable. This though offered as evidence in chief, is in the nature of rebutting testimony. For it will be incumbent on the defendant to show, that the driver was experienced and skilful. In an action against the owners, for negligently managing a ship, so that she was wrecked and the plaintiff lost his passage, another act of negligence not bearing on the wreck, and which could not possibly cause it, was held irrelevant. 1 Car. & P. 70. And where the defendant was indicted for keeping a disorderly house, the court confined the evidence to general reputation and excluded particular facts. 1 Serg. & R. 342, 343. But where an individual is indicted for passing counterfeit bills or notes, proof that similar notes or bills were found in his possession is admissible. And so on an indictment for passing counterfeit coin. If instruments for coining be found in possession of the defendant, the fact may be proved. Proof that he has at other times passed counterfeit notes or coin, is also prop-

er. This is admitted to show the knowledge of the defendant, that the notes or coins which he is charged to have passed, were counterfeit. 1 Phil. Ev. 179; 6 Barn. & C. 145; 1 Camp. 324; Bayley, Bills, 447. To show fraud in selling an inferior kind of goods for blue guineas, a witness was allowed to prove a sale to himself of a parcel of blue guineas by the defendants, before the sale to the plaintiffs; and the declaration and conduct of the defendants towards him on the subject of the distinct parcel. 1 Johns. 90, 99, 100.

In the case of Stokes v. Salstonsall, 13 Pet. [38 U. S.] 181, the declarations of the driver after the upset of the stage, that he had upset fifty stages, &c. was admitted by the circuit court as evidence, and the judgment of that court was generally affirmed by the supreme court. Had these declarations been considered as having been made by a witness merely, they would, clearly, have been inadmissible. But coming as they did from the agent of the defendant, and for whose conduct he was answerable, they conduced to prove a want of skill in the driver, and were, therefore, received as evidence. In our limited research we have been unable to find a case in point, but we are inclined to think, that as want of skill is a fact material in the present case "it may be proved as any other fact in the case;" and that in this respect the driver stands in a relation different from a witness whose character is impeached. Under this decision the plaintiff proved that on one occasion the driver had his lines fastened wrong, the check rein of one or both the lines being buckled on the outside; and that on another he handled the lines so unskilfully, as to nearly upset the stage in passing the waggon of one of the witnesses. The defendant proved that the driver had been employed by an agent, some few days before the upset, on his enquiring for stock, and saying that he had driven stage two years and six months for Calder, in Pennsylvania, on the northern route from Harrisburg to Philadelphia. The driver had been in Columbus a short time, and had professed to be an apothecary and a blacksmith. The defendant also proved, that his stage lines were generally managed as well and indeed better than any other lines in the western country. That drivers had uniformly been dismissed for intoxication and for any misconduct, on the complaint of travellers. That an experienced person was employed at Columbus, whose duty it was to inspect the stage coaches, harness, &c., and to see that no coach was taken out of the yard which was not in good order, and also the harness. He also proved that a day or two before the accident an agent passed on the line, and found the horses of the driver and also the harness in a good state; and his habits were proved to be good for the time he had been on the road. It was also proved the day after the injury, the plaintiff on being interrogated by a witness whether the driver was drunk, replied, that he did not know, but rather thought not. And the defendant called a witness to discredit Samuel Thompson whose deposition was read by the plaintiff, by showing that to different individuals the witness made statements different from those in his deposition. To the introduction of this evidence the plaintiff objected, on the ground that the witness had not been interrogated as to these statements, and that until this was done they could not be proved. This question it is admitted, after a full discussion has been decided, by the supreme court of this state, in favor of admitting the evidence. But it is insisted that this decision is in violation of the general rule on the subject. In the construction of the statutes of the state, and in matters of practice, so far as they have been adopted by the law of congress, this court follow the same rule of decision as the supreme court of the state. But in all other questions the court will look to the decisions of the state, as the decisions of other courts, and not as establishing the law.

This rule is well settled in England, that the contradictory statements of a witness cannot be proved, unless the witness shall be examined as to such statements. 1 Phil. Ev. 293; 2 Brod. & B. 286, 315; 2 Peake, 232. But if the statements are irrelevant to the issue, they cannot be contradicted. 4 Leigh, 405, 406; 5 Wend. 301, 302–305; 3 Car. & P. 75. And we think this is the correct rule. It is reasonable and just. Until a witness shall have had an opportunity to explain prior and contradictory statements, by having his attention called to them, they should not be the subject matter of proof. But in the present case, the deposition was taken ex parte, under the act of congress, and the taking of it was not known to the defendant until it was opened, at the present term. The plaintiff could not know of this attempt to discredit the witness, until the evidence now offered. It was in the power of the defendant, on reading the deposition, to move for a continuance, on the ground that he wished to take the deposition of the witness in regard to the statements, with the view of afterwards contradicting him. This, perhaps, might be done, as the deposition of Thompson, thus taken, would be substantially a cross examination. But as the rule of evidence on this point had been differently settled by the supreme court from the view here given, we will, under the circumstances, admit the evidence. It is to be understood, however, that we adhere to the English rule on the subject. In the case of Daggett v. Tallman, 8 Conn. 169, 177, 178, the court say, in general, wherever a fact would be relevant as affecting the credit of a witness, and might be inquired of upon cross examination, the same fact may be shown to impeach his credit, where he is absent, having made a deposition. This rule, however, must be subject

to many exceptions. Several witnesses being sworn, stated that Thompson, who was the outside passenger with McKinney on the stage, and who was also considerably injured, on the same evening that the stage was upset and the next day, said he did not think that the driver was much, if any, to blame; and that he hoped the company would not discharge him. That he stated, as they were going at a rapid rate down the hill, he and also McKinney requested the driver to check the horses, and that the driver, bracing his feet against the foot-board, pulled the lines with all his force, when something gave way, and the stage immediately upset. A statement of the facts which the defendant expected to prove by the driver McKee, having failed to take his deposition, was read as evidence, without objection. This witness stated, that near the summit of the hill he came in contact with a waggon, which frightened his horses, so that they became unmanageable, and that at the foot of the hill, in attempting to avoid a pile of stones, the lines broke and the stage upset. It was proved by other witnesses that some four or five hundred yards from where the stage was left, two pieces of the lines were picked up, one piece about four feet long, the other about one foot; and the witness stated that on those pieces being sewed on the lines they were complete. Another witness stated that he picked up a part of one of the lines, about four feet in length, in the road about a rod or two in advance of the stage. Whether this was the piece picked up by the other witness and brought near to the stage was not explained.

The cause was zealously and ably argued on both sides; and THE COURT charged the jury substantially as follows:

The injury received by the plaintiff, and for which this action was brought, is proved by Dr. Morris, the attending physician, and several other witnesses. There is no contrariety in the evidence as to the extent or permanency of the injury. The suffering of the plaintiff cannot well be estimated. It was as great as human nature could bear. For forty-eight hours the scales of life and death hung in suspense. The coldness which precedes dissolution pervaded his system. His pulse was at times not perceptible, and he labored under delirium. At length the system re-acted, and the symptoms became more favorable. But the progress of recovery was slow and painful; and it would seem, there is little ground of hope that he will ever recover from his present state of decrepitude. His leg may probably acquire more strength, but all the physicians agree that, in all probability, it will never become sound. In this form of action, the plaintiff seeks compensation from the defendant, for the sufferings he has undergone, the time he has lost, the money he has expended, the injury to his business, and the loss, in a considerable de-

gree, of his limb. Should the plaintiff be entitled to your verdict, you will be as capable as the court, and indeed more so, of estimating the amount of damages he should recover. The upsetting of the stage is prima facie evidence of negligence, and to sustain his action it was only necessary for the plaintiff to show he was a passenger, having paid his fare, and that he was injured by the upsetting of the stage. The defendant, with his partners, is engaged in an enterprise intimately connected with the public accommodation. Having incurred a large expenditure in establishing his lines of stages, he holds inducements to the public to travel in his lines. He is bound to provide good coaches and harness, gentle and well broke horses, and a skilful and careful driver. These are obligations which the law imposes on every stage proprietor; and if any injury is received by a passenger, from any defect in this preparation, the proprietor is responsible.

There are certain risks which are incurred by every stage passenger, and for which the proprietor is not responsible. These are those casualties which human sagacity cannot foresee, and against which the utmost prudence cannot guard. If, for instance, a gun should be fired so near the stage as to frighten the horses, and they, becoming unmanageable, upset the stage and injure a passenger, he is without remedy as against the driver or his employers, as no fault can be attributed to them. We are surrounded with dangers at home and abroad; and they are greater when we travel than while we remain stationary. In some modes of travelling these dangers are greater than in others. They may be greater on water than on land; on a fast line of stages than on a slow one. And every passenger must make up his mind to meet the risks incident to the mode of travel he adopts; which cannot be avoided by the utmost degree of care and skill in the preparation and management of the means of conveyance. This is the only guaranty given by the proprietor of the line. You will understand the application of the evidence better, gentlemen, if I consider it, in strictness, as it might have been introduced. The plaintiff then has sustained his right of action by showing the injury he received from the upset of the stage, he being a passenger. And it is then incumbent on the defendant to prove facts and circumstances which go to reduce the damages, or to excuse him from all liability. The defendant has shown by several witnesses a promptness and vigilance, by the company, in the general management of their lines very creditable to them. They have evinced a commendable solicitude for the accommodation and safety of passengers. And it would seem that no lines in the Western country, by the preparation of coaches, horses, drivers and a vigilant superintendency, are better entitled to public confidence than the one

now in question. But in this case it appears the driver employed had no other recommendation of his experience and skill, than that which was afforded by his own statements.

The main ground of the defence is, that blame does not attach to the driver. And this, it is insisted, is shown by the statement of facts which the driver would swear to, admitted as evidence; the remark of the plaintiff that he did not think the driver was intoxicated, and the repeated remarks of Thompson, that he did not think the driver was to blame and hoped he would not be discharged by the company. And it is contended that the fact of the lines being broken, strongly corroborates the statements of McKee, the driver, that the lines broke, which was the proximate cause of the upset of the stage. The declaration charges the injury to the want of skill and care of the driver, and not to any deficiency in the coach, harness, or horses. And the court recognize the principle urged, that the plaintiff can recover only on the grounds stated in his declaration. So that if the lines were broken by reason of any defect in them, that can give no right of recovery to the plaintiff. It must be observed that the statements made by Thompson, as proved by the defendant, are not evidence in chief, but can only be considered as lessening the weight or destroying the effect, of the facts stated in his deposition. On the part of the plaintiff, it is insisted, that the other evidence goes to disprove the statement of the driver, and that independently of the deposition of Thompson, which they do not admit to be discredited, they have shown recklessness and want of skill in the driver. That the speed with which he drove down the hill, using his whip and not using the lock, showed him to be reckless and was the cause of the disaster. The driver must not only be skilful, but he is bound to exercise the utmost degree of care. And if you shall think, from the evidence, that in commencing the descent of the hill and driving down it, in the manner proved, he acted imprudently or rashly, the defendant is liable, although you should find that the immediate cause of the upset was, the breaking of the lines. The least degree of imprudence or want of care in the driver fixes the liability of his employers. And if in this case in descending the hill, such an impetus was given to the stage as to render it difficult and hazardous for the driver to check and control his team, the defendant is liable. It is evidence of want of care in the driver, if he leave the common track and take one not used, which increases the risk. Something has been said as to the exposure of the plaintiff by keeping an outside seat, when he might have taken a seat inside of the coach. This circumstance can have no influence in the case. The defendant was as much bound to convey the plaintiff safely on the outside as the inside of the coach. It is not pretended that the upset of the stage was, in any degree, attributable to the position or the act of the plaintiff.

Upon the whole, gentlemen, having heard, with a most patient and careful attention, the evidence and arguments of counsel, it remains for you to make up your verdict in this important case. A case interesting to the parties and to the public. If you shall find from the evidence, that the upset of the stage was caused by one of those accidents which a skilful driver, using the utmost care could not avoid, you will find for the defendant; but on the contrary, if you shall believe that the injury received by the plaintiff was, in any degree, attributable to a want of skill or care in the driver, you will find for the plaintiff, and assess for him such damages, as under all the circumstances, you shall think him entitled to receive, and the defendant is bound to pay.

The jury returned a verdict of $5,325.00 in damages, for which a judgment was entered.

NOTE. As the statement of the driver, in this case, was read in evidence, without objection; and as the driver implicated was examined as a witness, without objection, in the case of Maury v. Talmadge [Case No. 9,315], tried at the same term, it may not be improper to say something as to the competency of this evidence. An interest in the question does not go to the competency of a witness. But if the verdict can be used in evidence against the witness, should the party who called him, fail, the witness is incompetent on the ground of interest. In Phil. Ev. (Ed. 1839) 56, 130, it is said that in an action against a master for the negligence of his servant, the servant is not a competent witness to disprove his own negligence; for the verdict may be given in evidence in a subsequent action by the master against the servant, as to the quantum of the damages, though not as to the fact of the injury. And to this effect are the following cases: Green v. New River Co., 4 Term R. 589; Martin v. Henrickson, 2 Ld. Raym. 1007; Miller v. Falconer, 1 Camp. 251; 15 East, 474; 3 Camp. 416; Rotheroe v. Elton, Peake, 84; 2 Moore, 508; 8 Taunt. 454. But though agents and brokers are competent to prove a sale or contract, they are not competent to prove the contract properly executed, in an action against the principal for their misconduct or negligence. 1 Holt, N. P. 139; Bird v. Thompson, 1 Esp. 339; 6 Esp. 73. The coachman in an action against another for an injury done by a cart to the coach, while the coachman is driving, is not a competent witness for the plaintiff, the owner of the coach. Kerrison v. Coatsworth, 1 Carr. & P. 645. So a pilot is not a competent witness for the captain of a steam boat, sued for running down a barge, the pilot steering at the time of the accident, though the captain was on board. Hawkins v. Finlayson, 3 Carr. & P. 305. The guard of a coach is not competent for the proprietors, sued for mismanaging it, so that the plaintiff was struck by the luggage. Whitamore v. Waterhouse, 4 Carr. & P. 383. In the case of The Hope [Case No. 6,678], it was held that where a vessel was seized for a violation of the non-importation act of 1st March, 1809, c. 91 [2 Story's Laws, 1114; 2 Stat. 528, c. 24], and there were strong circumstances to induce a presumption that the master was privy to the illegal importation of the goods, which were found concealed on board the vessel, it was ruled that he was not a competent witness for the owners of the vessel, to prove his ignorance of the goods being on board. He had a direct interest to prevent a forfeiture, occasioned by his own illegal conduct; for the decree of condemnation would be good evidence

in a suit brought against him by the owners. From these authorities it would seem, that the driver is not a competent witness in behalf of the proprietor who is prosecuted for an injury received, through the negligence or misconduct of the driver.