JOHN FRINK *et al.*, Appellants, *v.* CHAMPLIN R. POTTER, Appellee.

### APPEAL FROM LASALLE.

The deposition of a witness may be read on a trial, although the witness is present. The other party may make the witness his own, and examine him if he chooses.

The driver of a stage coach, in an action against the proprietor by a passenger for injuries sustained, by upsetting of the coach, may testify as to its condition at the time of the accident.

A stage proprietor will be liable for injuries to a passenger, although it should appear that the injuries resulted from the breaking of an axle, from the effect of frost.

Carriers of passengers are held to strict care and vigilance, and are liable for the consequences of slight neglect or want of care. The law imposes upon them the duty of carrying passengers safely, so far as by human agency, in view of the particular mode adopted and all attending circumstances, is reasonably practicable.

If the carrier knew, or might have known by the exercise of extraordinary care and attention, that danger would result from using a coach, in the manner and under the circumstances to which it was applied, and this danger could have been avoided, he will be liable.

A passenger in or upon a stage coach may leap from it, to extricate himself from peril, occasioned by the fault of the carrier, if he does so without rashness.

In an action on the case for injuries against several, as stage proprietors, the plaintiff need not prove that all the defendants were joint owners of the stage line.

The rules applying to actions *ex delicto* determine the rights of parties, where the gist of the action is a breach of duty, not depending upon a contract, and the allegations show that the law raises the duty by reason of the calling of the defendant.

Common carriers of passengers are not insurers against all injury or damage. Nor does the law require of them unreasonable or impracticable vigilance.

THIS was an action on the case by the appellee against the appellants.

The declaration contains four counts substantially alike, in each of which appellee alleged that appellants were proprietors of a coach, and running the same from Peoria to Springfield in December, 1852, and that, at the *instance* and *request* of *appellants*, appellee became and was a passenger in said coach, to be carried from Peoria to Springfield for hire, and that, on the route, for want of proper care on the part of appellants, the coach was *overturned*, and *thereby* plaintiff was hurt.

To this declaration appellants pleaded not guilty.

The cause was tried by HOLLISTER, Judge, and a jury, at the November term, 1854, of the LaSalle Court, and a verdict and judgment against the appellants for $3,604.50 damages.

On the trial, appellee was permitted, by the decision of the Circuit Court, to read in evidence the deposition of Andrew Pennell, when the witness was personally present in court, and appellants excepted.

The eighth interrogatory and answer thereto were as follows:
"What was the condition of said stage coach, and, particularly, state whether said coach was safe and in good condition for carrying passengers, and if not, what were its defects? *Ans.* The condition of the coach was bad. It was old, much out of repair, and wholly unfit to run on the road for carrying passengers. The defects are fully stated in my answer to the sixth interrogatory."

Appellants objected to the above question and answer, on the ground that it gave merely the opinion of the witness, and not mere facts. Objection was overruled, and evidence given.

At the close of the reading of Pennell's deposition, appellants claimed the right to put Pennell on the stand and cross-examine him, which the court refused.

Afterwards, before appellee closed his evidence, appellants did cross-examine Pennell, with the consent of appellee.

Pennell, in his deposition, stated in substance, that he resides at Niles, Michigan; that he knew the parties; that, in the last days of December, 1852, he was driving stage for appellants, who were the proprietors; that appellee was a passenger in the coach he drove, and that the coach was broken and overturned; that the cause of the accident was, the coach was old, and defective in this—the transit plate was out of order; that plaintiff was a passenger, and, at the time of the accident, was riding on the outside with the driver, and that, by the accident, plaintiff was induced to jump off and hurt his ankle or leg; that the inside passengers were not hurt.

Wyatt, a passenger in coach at the same time, testified that it occurred on the trip from Peoria to Springfield about noon on the Wednesday after the last Tuesday of December, 1852; the ground was level, pretty ground, and the coach was going at a moderate rate; that the weather was very cold—the ground frozen hard the night before, but was thawing a little at noon when the accident occurred.

Defendant objecting, the court permitted witness to state, "It is customary for passengers to ride outside," and defendant excepted.

The axletree was broken near the middle.

Defendants' witness, Dare, testified that he was, at that time, the agent of defendants in Springfield; saw Potter immediately after Potter's arriving at Springfield; that Potter, speaking of the accident, said it was a clear, cold day; that it was an unavoidable accident; that the axletree broke, let the coach down, and that, "had he remained on the coach as he ought to have done, he would not have got hurt;" "that there was no person to blame."

Dare further testified that the coach to which the accident occurred was a strong, well made coach, and in good condition.

T. L. Dickey and W. H. L. Wallace, for Appellants.

E. S. Leland and B. C. Cook, for Appellee.

Skinner, J. This was an action on the case, against Frink, Sanger, Walker and Parmerly, as common carriers of passengers by stage, for an injury to the plaintiff while a passenger in one of the defendants' coaches. The declaration, in various ways, alleges that for want of proper care on the part of the defendants, the coach in which the plaintiff was a passenger, broke and overturned, whereby the plaintiff was hurt and wounded. Verdict and judgment for the plaintiff against all of the defendants.

On the trial the plaintiff offered to read in evidence the deposition of a witness taken in Michigan. The defendants produced the witness in court, and objected to the reading of the deposition, for the reason that the witness was in court; and the court overruled the objection. The deposition having been taken in conformity with the law, was admissible in evidence, and the plaintiff could not be deprived using it by the act of the defendants. They had had an opportunity of cross-examining the witness when the deposition was taken. If they chose they could have called the witness as their own witness, and examined him generally, as well as touching the matters to which he had testified in his deposition. Beyond this they could not go. *Bradly* v. *Geiselman,* decided at the present term of this court; *Phenix* v. *Baldwin,* 14 Wend. 62.

The defendants objected to the eighth interrogatory of this deposition, and to the answer thereto. There is no merit in the objection. The witness was the driver employed by the defendants, and he is asked what was the condition of the coach, whether it was safe and in good condition, and if not, what were its defects? He answers that it was bad, old, out of repair, unfit to run, and refers to his answer to the sixth interrogatory for statement of the particular defects. There is nothing asked or answered, about which men of ordinary knowledge and experience would not be competent to judge, with greater or less accuracy; nor is any question of science or skill raised, requiring the interposition of an expert for solution. *Ward* v. *Salisbury,* 12 Ill. 370. But, if it were otherwise, the defendants' employee in the business of stage driving, as against them, would be presumed to possess the requisite skill to judge of the condition of the stage coach, and of its fitness for use. The objection to proof by plaintiff, that it was customary on the line

for passengers to ride on the outside of coaches, is equally meritless.

The court refused the following six instructions asked for by defendants:

" If the jury believe from the evidence that the cause of the accident which occasioned the plaintiff's injury was the breaking of the axletree of the defendants' coach from frost, and not from any defect in the axletree, then they should find for the defendants."

"If the jury believe from the evidence that the cause of the accident which occasioned the plaintiff's injury was the breaking of the axletree of the coach from frost, and not from any defect in the coach, or in the axletree, then, whether the coach was old and defective or not, they should find for the defendants."

" If the jury believe from the evidence that it is equally as probable that the axletree broke from the effect of the frost as from any defect in the coach or in the axletree, then the jury should find for the defendants."

" If the jury believe from the evidence that the plaintiff's injury resulted from sliding, or jumping, from the outside of the coach, before the same upset, and not from the upsetting of the coach, then the jury should find for the defendants."

" Whether the plaintiff would be justified, or not, in jumping or sliding from the coach, in order to avoid a greater apprehended peril that might result to him from awaiting the upsetting of the coach, yet, inasmuch as that state of facts is not alleged in the declaration, the plaintiff cannot recover, even although the above state of facts may be true."

" Unless the jury believe from the evidence that all the defendants, Frink, Sanger, Walker and Parmerly, were joint owners of the coach in which the plaintiff was a passenger, at the time of the accident, they cannot find for the plaintiff."

The court instructed the jury, on the part of plaintiff, that,

" If the coach might have been constructed in a manner that would have obviated all danger from frost, and still have been suitable for the business of carrying passengers; or if the defendants, by housing or taking the utmost care of their coach, when it was not running, could have prevented the action of the frost, then, even if the axletree did break from frost, that would not constitute a defence."

The first, second and third of these instructions suppose the law to be, that if the injury arose from the breaking of the axle, and that frost was the cause of the axle breaking, the defendants are without fault, and, therefore, not liable. It does not follow that, because the axle broke from frost, the defendants were not in fault. It is the duty of common carriers of

passengers to do all that human care, vigilance and foresight can, under the circumstances, and in view of the character of the mode of conveyance adopted, reasonably, to guard against and prevent accidents, and consequent injury to passengers. They are held to strict care and vigilance in providing and operating their respective modes of conveyance, and are liable for the consequences of slight neglect or want of care. The law imposes upon them a duty safely to carry those who take passage with them, so far as by human agency, in view of the particular mode adopted, and all attending circumstances, is reasonably practicable. 2 Kent's Com. 600; Angel on Carriers, chapter 11; *Stokes* v. *Saltonstall*, 13 Peters 181; *McKinney* v. *Neil*, 1 McLean 540; *Manny* v. *Talmadge*, 2 McLean 157.

Frost may have been the immediate cause of the accident, and yet the accident might have been avoided by the exercise of that care and vigilance incumbent upon the defendants. If, for instance, the axle was composed of material peculiarly subject to the action of frost, and the coach was used at a time, in a manner, or under circumstances likely to produce a breaking of the axle, and without resort to such preventive measures as were practicable, and reasonably accessible; or, if the cold was severe, and the coach had been unnecessarily exposed to the action of the frost, and such exposure increased the danger arising from such cause; or, if the defendants knew, or might have known, by the exercise of extraordinary care and attention, the danger of using the coach in the manner and under the circumstances used, and this danger could have been, by strict vigilance, avoided, the defendants would, upon the principle stated, be in fault, and liable. All the facts being admitted supposed by these instructions, yet the defendants may not have been without fault.

The fourth and fifth of these instructions assume, that under the allegations of the declaration the plaintiff cannot recover, if, before the actual overturning of the coach, by sliding or jumping therefrom, although to avoid a greater apparent peril, the plaintiff received the injury. The declaration alleges that the fore axle of the coach broke down, and the coach overturned while running, and that thereby the plaintiff was hurt and wounded. The evidence shows that the plaintiff was riding on the outside of the coach with the driver; that the axle broke in the center, letting the coach down and upsetting it; that the plaintiff, at the time of the accident, or before the coach upset, jumped or slid from his seat to the ground; and that the passengers inside the coach were not injured. It is wholly immaterial whether the plaintiff was injured by the upsetting of the coach, or whether the axle having broke and the plaintiff thereby having been put in actual peril, to avoid injury, in the

exercise of ordinary discretion, jumped to the ground, and in so jumping received the injury. Passengers have a right, the best they may, to extricate themselves from peril, the fault of the carrier; and if in obeying the dictates of their nature, and without such rashness as the circumstances would not reasonably excuse, they meet an unlooked-for injury, the carrier is still liable, for the injury is the result of his wrong. The breaking of the axle, in this case, was the direct and proximate cause of the injury, and a part of the accident out of which it arose. The fact that the plaintiff was riding on the seat with the driver, makes no difference. It is not pretended that the conduct of the plaintiff produced, or contributed to produce, the accident, of which the injury was the consequence; and unless it did, it is not a case of injury resulting from the plaintiff's wrongful act, or the concurring wrong of both parties.

He was so riding by the permission of the defendants, and although the danger of injury in case of accident was thereby increased, this would not exonerate the defendants from liability for their negligence. *McKinney* v. *Neil*, 1 McLean 540; *Owners of Steamboat Farmer* v. *McCraw*, 26 Alabama R.

The sixth of these instructions assumes, that to maintain the *action*, the plaintiff must prove that *all* the defendants were joint owners of the stage line. This is not the law. The declaration is founded upon the common law regulating common carriers; and this law imposes a duty upon them by reason of their calling, from considerations of public policy, and without regard to contract. It is true, that the law presumes or implies from the fact of receiving, as common carriers, the passenger to carry for hire, a contract. But the plaintiff had his election to sue in assumpsit, declaring upon the contract, express or implied, or in case, for tort, declaring upon the breach of duty imposed by the law. He chose the latter, and was not compelled to maintain his *action*, to prove all guilty, or the alleged relation of all the defendants to each other.

If the defendants were joint owners of the stage line, and the accident and injury arose from the fault of either of them or their servants, each and all were guilty. If but a portion of them were proprietors of the line, then such proprietors, and each of them, were guilty, if the accident and injury arose from the fault of any of them or of their servants. It is urged that, as the declaration alleges, that all of the defendants were joint proprietors; unless this be proved, the *allegata* and *probata* do not correspond, and the plaintiff must therefore fail. This would be true were the contract declared on, or were it the substance of the cause of action; but is not true when the action is in form *ex delicto*, and founded solely on a breach of

the common law duty of common carriers. In case, generally, the plaintiff may recover against so many as he proves guilty of the alleged wrong, although he may have alleged the wrong to have been committed jointly by all of them, if, indeed, in contemplation of law the wrong can jointly be committed. There is a class of cases arising out of contract, where, by reason of the contract, the law raises a duty, for the breach of which *duty* an action on the case may be maintained; and in such cases the contract being the basis and *gravaman* of the suit, must be alleged and proved. Where, too, from the facts the duty arises, and there is also a contract which is alleged and made the substance and gist of the cause of action, although the action be case, it being substantially founded upon contract, the rights of the parties will be governed by the law of contract.

But when the gist of the action is a breach of duty and not of contract, and the contract is not alleged as the cause of action, and when, from the facts alleged, the law raises the duty by reason of the calling of the defendant—as in case of innkeepers and common carriers—and the breach of duty is solely counted upon, the rules applying to actions *ex delicto* determine the rights of the parties. 1 Chitty's Pl. 87, 88; *Wright* v. *Gear*, 6 Vermont 151; *Bank of Orange* v. *Brown et al.*, 3 Wendell 158; 6 Watts 47; *Bretherton* v. *Wood*, 3 B. and Bing. 54; *McCall* v. *Forsyth*, 4 Watts and Serg. 179; 19 Wend. 534; Angel on Carriers, Secs. 422 to 429.

The instruction given by the court for the plaintiff was doubtless intended as a qualification of instructions given for the defendants, but in any light was calculated to mislead the jury, and if held to be the law, would extend the liability of common carriers of passengers to a most unreasonable point. Common carriers of passengers are not insurers against all injury or damage.

Although the law requires the highest degree of care on the part of the defendants, and holds them liable for slight negligence, it does not require of them unreasonable or impracticable vigilance. The language of the law must be viewed in a practicable and common sense light, and so applied in the administration of justice. What is reasonable and practicable under one condition of things, may not be under another. What in one case would be accessible, and facilitate the convenience and safety of travel, in another and under different circumstances might be inaccessible, and destructive of the particular enterprise. The axle *might* have been constructed of wood, or other material than iron, and have been, perhaps, suitable to the business, which frost would not affect, and yet, upon the whole, not have been as safe, or fit for the particular use. The housing

of the coach might, from the condition of the country, have been impracticable.

If the same acts of care and precaution practicable in the most populous countries and under the most favorable circumstances were required to fill the measure of the law, under a condition of things entirely different existing in a new country, the effect would be to discourage enterprises of the character in question, and to lessen the facilities for public travel of the people of the newer portions of our country. The law is not designed to work such a result. The true question for inquiry was : would a person of extraordinary prudence and caution, intending to afford the greatest security to passengers, and at the same time afford reasonable facilities to travel, under all the circumstances, have acted differently ?  It is impossible, by the use of language to define negligence *in fact*, applicable alike to all circumstances and conditions of things ; and all that can be done in determining in any given case whether there is or is not negligence, is, in view of all the surrounding facts, the nature of the means employed and the character of the enterprise, by the exercise of the reason to form a judgment as to whether it does or does not exist. *Beers* v. *Housatonic Railroad Company*, 19 Conn. R. 566.

Judgment reversed and cause remanded.

*Judgment reversed.*