## Gus J. Grubczak, Plaintiff in Error, v. Chicago Railways Company, Defendant in Error.

### Gen. No. 30,899.

1. CARRIERS—*when evidence sufficient to warrant direction of verdict in action by passenger for injuries.* Evidence in an action by a street car passenger for injury in a fall when he was struck by a horse which crashed through the door and partition on the closed side of the rear platform, held to warrant direction of a verdict for the defendant.

2. CARRIERS—*duty of street railway company with respect to safety of passenger against injury by collision.* While a street car company owes to its passengers a duty to exercise the highest degree of care consistent with the mode of conveyance adopted and the practical operation of the business, yet it is not an absolute insurer of the safety of its passengers against possible injury from collision.

3. CARRIERS—*duty with respect to furnishing safe cars and appliances for transportation of passengers.* The duty of a carrier of passengers to exercise the highest degree of care to furnish cars which are safe and equipped with proper appliances is sufficiently performed if it provides cars and appliances of the most approved type in general use by others engaged in a similar occupation.

4. CARRIERS—*duty of street railway company with respect to furnishing cars constructed so as to prevent injury by extraordinary collision.* The duty of a street car company to exercise the highest degree of care to furnish safe cars held not to require it to provide a car so constructed as to prevent a horse, colliding with the rear end thereof, from breaking down the door and partition on the closed side of the rear platform, and thereby cause injury to a passenger standing on such platform.

Error by plaintiff to the Superior Court of Cook county; the Hon. JOHN J. SULLIVAN, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1926. Affirmed. Opinion filed November 29, 1926. Rehearing denied December 13, 1926.

HARRY W. STANDIDGE, for plaintiff in error.

GEORGE W. MILLER and ARTHUR J. DONOVAN, for defendant in error; FRANK L. KRIETE and WARNER H. ROBINSON, of counsel.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is an appeal by Gus J. Grubczak, the plaintiff, from a judgment in favor of the Chicago Railways Company, the defendant, in an action brought by the plaintiff to recover damages for personal injuries alleged to have been caused by the negligence of the defendant.

The case was tried before the court and a jury. At the close of the plaintiff's evidence, on motion of the defendant, the court peremptorily instructed the jury to return a verdict in favor of the defendant.

The only question to be determined is whether on the plaintiff's evidence the court was justified in giving the directed verdict.

The well-established rule in regard to directed verdicts, as stated in the recent case of *Shannon v. Nightingale,* 321 Ill. 168, is as follows (p. 176): "On the motion to direct a verdict only that evidence can be considered which is in favor of the party against whom the motion is directed, and that evidence must be considered in the light most favorable to that party, together with all legitimate inferences which may be drawn from it in his favor."

The plaintiff was injured in an accident while he was a passenger on a street car operated by the defendant. At the time of the accident the plaintiff was on the rear platform of the car. He had just boarded the car on the rear end, had paid his fare, and was starting to go inside of the car when a horse, ridden by a man named Charles Sula, crashed through the door and partition on the side of the rear platform opposite to the side on which the plaintiff had boarded the car, and the plaintiff was struck, fell on his back and was injured. There were two other passengers standing on the rear platform at the time, but they were not injured. The impact was so violent that, according to one witness, "the doors, hangings and things" were

knocked "clean through and on the street, over there, over on the sidewalk somewhere." Sula, the rider of the horse, was thrown onto the rear platform and fell between the conductor and the step of the car. The front half of the horse was on the car. The hoofs of the horse were about in the center of the platform. The horse "came up pretty nearly to his back legs;" "pretty near all on" the platform. The "horse's right hoof was right on the back of the lever" and "there he was hanging." The horse "was dragged a little ways and he was kind of turned around on the platform, then finally he dropped off." He "stayed on for just a second." The evidence does not show what caused the horse to crash into the car. According to the evidence, before the crash he was going a "pretty good gait," and was "all sweaty, full of foam." The horse and rider landed on the platform at the same time. One witness said: "The crash all came together; that was all made so quick." The plaintiff was struck in the chest by the door, made a step or two backwards, and took hold of an iron railing. The railing "tore out and broke," the plaintiff fell backwards on the platform, the door struck his "limbs and the railing came down on top of it." The railing referred to was about a 1⅜ inch pipe on the rear platform in front of the place where the conductor stands. The railing was partly curved around the conductor and was about three or four feet above the floor of the platform. The railing was supported by two iron pipes which were set in sockets on the floor of the platform. One end of the railing fastened onto the partition between the rear platform and the inside of the car. The other end of the railing was so adjusted that it could be fastened to a vertical iron pipe which extended from the floor of the rear platform near the step to the roof of the platform. At the time of the accident the railing was not fastened to the vertical pipe. The door and partition through which the horse

and rider crashed were constructed largely of glass and wood, the upper part of the door and partition being mostly glass. The door and partition were on what was called the "blind" side of the car. The door was closed and was not used for exit or entrance at the time of the accident. The construction of the partition and door was described by the plaintiff and another witness in connection with photographs which were introduced in evidence and which appear in the record. These descriptions are not very clear and we do not think it is necessary to state them. It is sufficient to say that it is apparent from the evidence that the partition and the door were not constructed with sufficient strength to withstand the impact of the horse. It also may be stated that the railing was not constructed in such a manner as to support the plaintiff in the circumstances.

The contentions of the plaintiff are that the defendant was negligent in constructing the door, partition and railing in an insecure, insufficient and improper manner.

Counsel for the plaintiff maintains that "the evidence shows that not only said railing, the breaking of which caused plaintiff to fall, was defective, but that also the so-called 'blind' side of said rear platform was so frail and fragile that not much more than slight pressure upon it would cause it to fall, and   *   *   * a jury would be warranted in finding that said defendant was liable for such unsafe and insecure construction thereof."

From the evidence it is obvious that the accident was a most unusual and extraordinary one, and was one that reasonably never could have been expected to happen. While it is the rule that the duty that a street car company owes to its passengers requires the company to exercise the highest degree of care consistent with the mode of conveyance adopted and the practical operation of the business, yet it is also

the rule that the company is not an absolute insurer of the safety of its passengers against possible danger from collision. *Coulter v. Illinois Cent. R. Co.*, 264 Ill. 414, 420; *Heller v. Chicago City Ry. Co.*, 209 Ill. App. 140, 141.

The rule requiring carriers of passengers to exercise the highest degree of care consistent with the mode of conveyance adopted, and the practical operation of the business, involves the duty to exercise the highest degree of care in furnishing cars which are safe and which are provided with the proper appliances. 6 Cyclopedia of Law and Procedure, 621; 10 Corpus Juris, p. 958.

The rule does not require "unreasonable or impracticable vigilance." *Frink v. Potter*, 17 Ill. 406, 412. Nor does the rule require that machinery and appliances which are absolutely the safest shall be used, without regard to the practical nature and exigencies of the business. The duty is to make use of well-known and approved appliances for the safety of passengers so far as is reasonably consistent with the carrying on of the business and the discharge of the duty which the carrier owes to the public. 6 Cyclopedia of Law and Procedure, 619; *North Chicago St. R. Co. v. Wrixon*, 51 Ill. App. 307, 312.

If the cars and appliances of a common carrier of passengers are of the most approved type in general use by others engaged in a similar occupation, the duty of the carrier is sufficiently performed. 10 Corpus Juris, p. 960.

In our opinion there is no evidence fairly tending to show that the defendant failed to exercise the highest degree of care required in the circumstances to protect the plaintiff against the injury that he sustained, and there is no evidence whatever that the collision itself was proximately caused by any negligence on the part of the defendant.

Grubczak v. Chicago Railways Co., 242 Ill. App. 384.

There is no expert testimony to show that the construction of the door, partition or railing was not the most approved construction. There is no evidence tending to show that the construction was not adequate to protect passengers from all dangers that reasonably could be expected by the exercise of the highest degree of foresight or vigilance. The evidence does not show that there was any defective material in the door, partition or railing, or that any part of the door, partition or railing was in need of repair.

In our opinion the fact that the door and partition were not strong enough to withstand the unusual and extraordinary impact in question is not sufficient, of itself, to charge the defendant with negligence. It is clear from the evidence that the railing was not intended to be used for protection in such an unusual or extraordinary situation; and we do not think that it was the legal duty of the defendant to have constructed the railing with such strength and security as to afford support to the plaintiff in the circumstances.

Counsel for the plaintiff contends that if the railing "had been properly fastened" to the vertical pipe, and had not broken, "it is reasonable to believe" that the plaintiff "would not have been injured." The implication of counsel's argument is that the defendant was negligent because the railing was not fastened to the vertical pipe and that as a consequence the railing broke. The answer to the contention of counsel, in our opinion, is that the duty imposed by law upon the defendant did not require the defendant to construct or fasten the railing so as to afford protection against such an extraordinary, unexpected accident. Furthermore, we do not think that it is a legitimate inference from the evidence that if the railing had been fastened, it would have supported the plaintiff and prevented him from being injured. The iron pipes to which the railing was attached were not fastened to the platform. They were merely inserted

in sockets in the platform with flanges on them, on which they set, about three or four inches from the bottom. Since the iron pipes supporting the railing were only in sockets and not fastened to the platform, the reasonable presumption is that the iron pipes would have been pulled out of their sockets even if the railing had been fastened to the vertical pipe. It is probable that the door, partition and railing all could have been constructed with sufficient strength to withstand the impact of the horse. But there is no evidence tending to show that such construction would have been the most approved construction customarily used, and we think the duty imposed by law on the defendant required only the use of the most approved construction which would protect its passengers from dangers that reasonably could be expected by the exercise of the highest degree of foresight and vigilance.

It follows from the views we have expressed that the accident was of such an unexpected, unusual, extraordinary nature that in the circumstances the defendant cannot be held to be negligent in not protecting the plaintiff against the injury that he sustained.

For the reasons stated the judgment is affirmed.

*Affirmed.*

McSurely, P. J., and Matchett, J., concur.