STUETTGEN, Administrator, Respondent, vs. WISCONSIN CENTRAL COMPANY, Appellant.

*October 24 — November 17, 1891.*

*Railroads: Negligence: Killing of child on track: Gate at farm crossing: Evidence: Conflicting presumptions.*

1. Plaintiff's intestate, a boy about two years old, got upon the defendant's track about 5 o'clock P. M., and a few minutes later was killed by a passing train. He got upon the track at a farm crossing, either through an open gate or through an opening about twenty inches wide at one end of the gate. Two of defendant's section-men testified that immediately after the train started on, after the accident, they found the gate open and closed it. Two witnesses for the plaintiff testified that they left the gate closed about noon on that day, and no one had been seen to pass through the gate afterwards. No one had any occasion to open the gate, except said two witnesses and the plaintiff. The jury found specially that the boy passed through the opening in going upon the track; that the gate was closed at the time; and that the section-men did not close the gate after the accident. *Held*, that these findings were warranted by the evidence.

2. The opening at the end of the gate had existed at least two months, and the section-men had repeatedly been asked to repair it. The section boss had refused to allow the plaintiff to fix it, and had promised that he would attend to it. *Held*, that the defendant was guilty of negligence.

APPEAL from the Circuit Court for *Washington* County. Action to recover damages for the negligent killing of plaintiff's intestate. The facts will sufficiently appear from the opinion. The jury having assessed the plaintiff's damages at $4,000, he consented to a reduction thereof to $2,000; and from a judgment on the verdict for that amount the defendant appealed.

For the appellant there was a brief by *Howard Morris*, attorney, and *Thos. H. Gill*, of counsel, and oral argument by *Mr. Morris*.

*J. E. Wildish*, for the respondent.

ORTON, J.  This action is brought to recover damages against the defendant company for the negligent killing of the plaintiff's son, about two years of age, on its track. The defendant's negligence is predicated upon an alleged defective gate in its right-of-way fence, through which the child strayed.

The accident occurred about 5 o'clock in the afternoon of July 20, 1889.  The plaintiff and his family lived in a rented house on the farm of one Neuberg, through which the defendant's track ran north and south, about twenty rods east of the track, and about two and one-half miles north of Colgate, in Washington county.  There was a wagon road from the highway, which ran east and west, and south of the house, past the house, in a northerly direction, to a barn, and thence curved towards the east to a gate in the right-of-way fence.  There was a pig-pen just north of the house and between them there was a fence with a gate.  A few minutes before the train came along the child was with the plaintiff, his father, at the pig-pen, where the father worked a very short time, and then went through the gate to the house, to get a hammer and some nails, and the child followed him to the house, and then was seen by one witness running down the wagon road towards the gate at the side of the right of way, and about five minutes afterwards the child was killed by the passenger train, a short distance south of the gate.  The ground between the house and railroad was an open field, but the road was fenced on both sides.  The gate through which the child passed to the track was a common shove-gate in a wire fence.  It was placed there by Mr. Neuberg, the owner of the farm.  When closed, there was an open space left at the south end, about twenty inches wide at the ground, and wider above, through which a man could pass.  Neuberg had stopped up this open space with ties, but about five or six weeks before the accident the ties were taken away by the section-men of the

company, and the space left open. After they were taken away, Neuberg notified the section-men to repair the hole or space, and the plaintiff notified one of the section-men to repair it about two months before the accident, and about a week or ten days before he told the section boss that he had asked the section-men to repair the gate, and asked him to give him, the father, the privilege of repairing it, as an accident might happen. The section boss told him to keep his hands off, as he was there to attend to the railroad fence, and would do so.

The jury found the following special verdict: " *First.* When the gate at the farm crossing was closed as far as it could be, the opening at the south end was twenty and one-half inches wide. *Second.* The said opening had existed at least two months before the accident. *Third.* The defendant company had knowledge of said opening for a sufficient time before the accident to have fixed it. *Fourth.* The gate was closed as far as it could be at the time of the accident. *Fifth.* The child passed through the opening of the gate in going upon the track. *Sixth.* The section-men, Smith and Moss, did not close the gate after the accident. *Seventh.* The plaintiff was not guilty of any negligence which contributed to the accident. *Eighth.* The plaintiff has sustained damage of $4,000 by reason of the accident."

It is obvious that the most material question of fact in the case was whether the child passed through the open space at the south end of the gate when the gate was closed. If the gate was open at the time, then the company was not negligent. It would then be a reasonable presumption that the child passed through the open gate, and not through the open space at the end. Was the gate open or closed? Two witnesses, Smith and Moss, section-men of the company, testified that immediately after the train started on its way they went to the gate, and found it open about three feet, and they closed it. Two witnesses of the plaint-

iff, Neuberg and his son, testified that they passed through the gate, about noon on that day, and left the gate closed.

1. The learned counsel of the appellant contend that the testimony of the two section-men is uncontradicted and unimpeached, and that, therefore, the verdict that the gate was closed when the accident happened is not supported by the evidence. It is more a question of presumption and probability than of positive fact whether the gate was open or closed at the time the child went through it, in view of the evidence. There was time for some one to have opened the gate after the accident, and it would not be conclusive that it was open at the time if that section-men found it open after the train had started; and so there was time for some one to have opened it after Neuberg and his son closed it at noon. If it was closed at noon, the presumption would be that it remained closed until and when the child passed through. If it was open soon after the train started, not long after the accident, the presumption would be that it was open when the child passed through. Whether the gate was open or closed when the child passed through depends, therefore, upon presumption, and not upon positive fact established by the testimony. There was therefore a conflict of presumption, rather than a conflict of the evidence, upon this question. So there is a probability that the gate was open when the child passed through, if it was open so soon afterwards; and there is a probability that the gate was closed at that time if it was closed at noon. The question, therefore, depends upon the probabilities also, and they are in conflict. In finding that the two section-men did not close the gate after the accident the jury must have found that they did not believe their testimony. It is contended that there was no evidence in conflict with it, and therefore the jury were bound to believe it. But there was in conflict with their testimony the presumption that the gate remained closed after

it was shut by Neuberg and his son at noon; and there was in conflict with it the probabilities or presumptions arising from the circumstances. This was a private farm gate. Neuberg owned the land on both sides of the road, and this was his private way across the road. No one had any occasion to open the gate, except himself and son, and his tenant, the plaintiff. No one was seen to pass through the gate during that afternoon before the accident. These circumstances make it very *improbable* that the gate was opened between the time the Neubergs closed it and the time of the accident. The jury had the right to consider these circumstances, and the probabilities arising therefrom, in passing upon the credibility of the testimony of the two section-men of the company. They had a right to say that their testimony was very *improbable*, in view of these circumstances, and weigh it in the scale against these probabilities, and find that the probabilities preponderate their testimony, and that they did not find the gate open so soon after the Neubergs closed it, when there was no one to open it. The jury had the right to consider the fact also that the *blame* or censure for this fatal accident was resting on these very section-men, who had the interest of self-defense to show that the child passed through the open gate, rather than through the opening at the end, which was left unrepaired through their negligence and fault.

From these considerations the jury had the right to find that these two section-men, " Smith and Moss, did not close the gate after the accident." This finding was not against all evidence, but on contradictory evidence. But this finding is not conclusive upon the question whether the gate was closed at the time of the accident. That finding must rest on the presumption and probability that it remained closed, after the Neubergs closed it at noon, until after the accident. These two findings are therefore consistent. But, besides the above circumstances and presumptions, it is

proper to mention the fact that the gate had been tampered with within a very few minutes after the accident. The plaintiff and Neuberg went to the gate, and found a board nailed across it which was not there before. The board was wet and muddy, as if just taken from the ground. We do not say that there was evidence sufficient to convict these two section-men of perjury. We hold only that there was evidence sufficient to warrant the verdict that they did not close the gate after the accident, and that the testimony on that question was contradictory and involved a question of credibility, and that, therefore, this court would not be warranted in disturbing the verdict. *Marshall v. Holmes*, 68 Wis. 558; *Pritchard v. Pritchard*, 69 Wis. 373.

2. It is contended by the learned counsel that, inasmuch as the jury did not find that the defendant was guilty of any negligence, there was not sufficient findings or evidence from which the court could draw such a legal conclusion. The testimony would seem to be amply sufficient for such a conclusion. The section-men had long been aware of this dangerous opening in the gate, and had been repeatedly notified to repair it. The plaintiff had asked the privilege to fix it himself, and the section boss refused, and promised that he would do so. So far as this little child was concerned, there might as well have been no gate at all. Such a hole or opening is just the place where such a little one would delight to crawl through to go upon the railroad, and he probably went there the more readily because he had been told not to do so. The culpable negligence of the company in leaving the gate so long unrepaired in this respect, is apparent. Neuberg used ties to stop up this opening, and made the gate sufficient in that way, but the section-men of the company took the ties out, and thus made the opening.

The charge of the court appears to have been full, fair,

and correct, and all the findings of the jury, as well as those entered by the court, appear to have been justified by the evidence.

The court very properly required the remission of one half of the damages found by the jury.

We find no error in the case.

*By the Court.*— The judgment of the circuit court is affirmed.