SMITH, Appellant, vs. CHICAGO, NORTH SHORE & MILWAU-
KEE RAILROAD, Respondent.

*March 6—April 3, 1923.*

*Carriers: Injuries to passenger: Negligence: High rate of speed:
    Automobile on track: Unfenced right of way: Liability under
    Illinois law: Evidence: Presumption.*

1. In the absence of a statute or ordinance governing the rate of
    speed, it is not negligence to operate an electric train at a
    speed of fifty miles an hour on a straight track in the open
    country.
2. Defendant's electric train, in which plaintiff was a passenger,
    was traveling at the rate of fifty miles per hour on a straight
    track in the open country near Lake Forest, Illinois, and
    parallel to the track, and separated only by a shallow ditch,
    was a roadway upon which a truck and an automobile were
    approaching each other. As the train drew near, the auto-
    mobile collided with the truck and was forced on the track,
    derailing the train. *Held,* in an action by the plaintiff to
    recover for damages to person and to property, that the
    motorman was not negligent in failing to see and appreciate
    that there might be a collision between the truck and the
    automobile.
3. The Illinois statute (sec. 62, ch. 114, Hurd's R. S.), which
    makes a railroad liable for injuries to stock in case its right
    of way is not fenced, is construed not to give a right of
    action to a passenger against a railroad on the ground that
    the right of way was unfenced when a collision occurred be-
    tween a train and an automobile on the tracks.
4. Where all the facts and circumstances relating to the accident
    were detailed in plaintiff's evidence, and there was no defect
    in the roadbed or instrumentalities used by the railroad, and
    the accident was caused by an outside agency over which
    defendant had no control, if there was any presumption of
    negligence it was fully rebutted.

APPEAL from a judgment of the circuit court for Racine
county: E. B. BELDEN, Circuit Judge. *Affirmed.*

This is an action to recover for loss of personal property
and for injuries sustained by plaintiff, a passenger in defend-
ant's electric train which was derailed as a result of striking
an automobile which had been forced upon the track. The

accident occurred in Lake Forest, Illinois, at a point where the tracks and the roadway run parallel and are separated only by a shallow ditch or gutter.

About 9 o'clock in the evening an automobile proceeding south on the road collided with a truck going north and was forced partly upon the tracks just as the train approached. The complaint alleged that by the terms of a statute the company was required to fence its tracks, and alleged further:

"That all of said injuries so sustained by plaintiff were due solely to the negligence and carelessness of the defendant in operating its said train at a high and negligent rate of speed within the corporate limits of the city of Lake Forest, Illinois, and to the failure and negligence of the defendant in failing and neglecting to fence its said right of way along and adjacent to said Old Sheridan road, and in failing and neglecting to operate its said train at such rate of speed and to keep said train under such control as would enable the same to be stopped in time to avoid a collision in the event that any obstruction appeared upon its said tracks adjacent to said public highway."

The statute referred to provides in part:

"That every railroad corporation shall, within six months after any part of its line is open for use, erect and thereafter maintain fences on both sides of its road or so much thereof as is open for use, suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on such railroad, except at the crossings of public roads and highways, and within such portion of cities and incorporated towns and villages as are or may be hereafter laid out and platted into lots and blocks, . . ."
"And when such fences or cattle-guards are not kept in good repair, such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation, to such cattle, horses, sheep, hogs or other stock thereon, . . ."   Sec. 62, ch. 114, Hurd's Stats.

Defendant denied all allegations of negligence and alleged that under the exceptions of the statute no fence was required at the place of the accident.

The motorman testified that the train was traveling from forty to fifty miles an hour; that he saw the truck when it was about 1,200 feet distant; that he also saw the auto; that he did not slacken his speed; that the car came suddenly upon the track when he was about 200 feet distant; and that he was unable to stop in time to avoid the collision.

In a special verdict the jury found that the speed of the train was fifty miles an hour; that under the circumstances this was a negligent rate of speed; that the defendant failed to exercise the highest degree of care reasonably to be expected of human vigilance and foresight in view of the character of the conveyance and consistent with the practical operation of the business; that such failure to use that degree of care was the proximate cause of the plaintiff's injuries; and that the damages to her person and property amounted to $3,775.

Upon motion of the defendant it was ordered that:

"The answer of the jury to question 2 of the special verdict be changed from 'Yes' to 'No,' and the answer of the jury to question 3 of the special verdict be changed from 'Yes' to 'No,' and that the answer of the jury to question 4 of the special verdict be changed from 'Yes' to 'No.' "

Judgment was ordered dismissing the complaint.

For the appellant there was a brief by *Thompson, Myers & Kearney* of Racine, and oral argument by *William D. Thompson.*

For the respondent there was a brief by *Simmons, Walker & Wratten* of Racine, attorneys, and *William A. Morrow* of Chicago, of counsel, and oral argument by *A. L. Gardner* of Chicago and *M. E. Walker.*

JONES, J. It is one of the grounds of negligence alleged that the train of defendant was running at such an excessive speed that it could not be properly controlled by the motorman. The highest rate of speed claimed was fifty miles per hour, as found by the jury. The line was straight and in

the open country.   The plaintiff relies on no statute or ordinance governing the rate of speed.   This question has several times been before this court.   In an opinion by Mr. Justice Timlin the court said:

"The highest estimate of speed is fifty miles per hour. We cannot close our eyes to the fact that in order to obtain an average speed, including slackening and stops, of thirty miles an hour, the speed at some points must reach very close to, if not quite touch, fifty miles per hour.   It is common knowledge that passenger trains on a good roadbed frequently exceed this speed between stations.   The 'great mass of mankind' which inhabits this part of the world demands such rapid transit.   The competitors of the defendants freely employ it.   No statute forbids it.   In the absence of some peculiar circumstances or particular conditions other than a country highway crossing somewhat obscured by trees and buildings, it is not for this court or for a jury to say that such speed in the open country is illegal or negligent."   *Jordan v. Osborne,* 147 Wis. 623, 624, 625, 133 N. W. 32; *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 157, 73 N. W. 993; *Shaffer v. M., St. P. & S. S. M. R. Co.* 156 Wis. 485, 145 N. W. 1086.

We must hold that the finding of the jury that this was a negligent rate of speed was properly set aside.

It is claimed by counsel for plaintiff that the motorman of the defendant was negligent in failing to see and appreciate that there might be a collision between the truck and the automobile.   There was some testimony that the driver of the truck drank some wine before leaving Chicago, but no evidence that he was intoxicated or unable to properly manage the vehicle.

The driver of the auto testified that there was some wobbling of the truck as he saw it approaching, but both he and the driver of the truck testified that they anticipated no danger of a collision.   The driver of the auto said:

"In coming down the road he kind of swayed from the center over to the east side of the road.   He probably crossed to the center a little.   When he was over there, I couldn't say whether he went across, but he wasn't far

enough across to cause any danger or make me think he was going to hit me or anything."

The driver of the truck said:

"Nothing indicated to me that there was going to be any accident at all; not until after it all happened. Before it happened I certainly didn't anticipate any accident. As this automobile shot up on the track, practically the same instant the train hit it. It seemed instantaneous to me."

The motorman of the train saw both the truck and the automobile approaching each other but observed nothing which led him to expect there would be a collision. The track at the place of the accident was straight for a distance of 3,000 feet south and 2,000 feet north. The motorman saw nothing unusual in the movement of the two cars, and when the automobile shot upon the track he applied the emergency brake and did his utmost to stop the train.

It is the theory of the plaintiff that under the existing conditions the train should have been run at such a speed as would have enabled the motorman to stop it in time to avoid an accident of this kind. The testimony was undisputed that if the train were running at fifteen miles an hour it could be stopped in a distance of about 200 feet, if running fifty miles an hour in about 1,600 feet. It is obvious that it would be impossible to comply with the demand of the traveling public if the speed of the trains of the defendant company had been limited to fifteen miles an hour.

It is true that collisions between automobiles are distressingly frequent, but they are comparatively infrequent, in the absence of crossings or intersections, on a straight level road. It seems to us very plain under the testimony that it was not the duty of the motorman to anticipate that the automobile would "shoot like a flash" upon the track ahead of him, and we consider that the trial judge was justified in changing the answer to the third question.

It is claimed by plaintiff's counsel that it was the duty of the court to find defendant negligent and liable to plaintiff as a matter of law in failing to fence off the track from the

vehicle-traveled part of McKinley road, and that it was error as a matter of law to hold that defendant's failure to fence did not constitute negligence on the part of defendant proximately causing plaintiff's injury. This brings up for consideration the Illinois statute above mentioned and its construction by the courts of Illinois.

The statute has been liberally construed by these courts, and it has been held that railroad companies failing to fence their tracks are liable not only for the killing of domestic animals but for injuries to passengers and employees caused by collisions of the trains with domestic animals on the track. This is upon the theory, as shown by cases cited below, that the object of the enactment was not merely to fix the liability for injuries occasioned to domestic animals, but to increase the safety of passengers and employees traveling upon the trains. This view has been adopted in other states having somewhat similar statutes. *Keyser v. C. & G. T. R. Co.* 66 Mich. 390, 33 N. W. 867; *Chicago, B. & Q. R. Co. v. Grablin,* 38 Neb. 90, 56 N. W. 796; *Isabel v. H. & St. J. R. Co.* 60 Mo. 475; *Nickolson v. N. P. R. Co.* 80 Minn. 508, 83 N. W. 454; *Blair v. M. & P. du C. R. Co.* 20 Wis. 254; *Schmidt v. M. & St. P. R. Co.* 23 Wis. 186; *Stuettgen v. Wis. Cent. R. Co.* 80 Wis. 498, 50 N. W. 407.

It is the substance of these decisions that the statute is primarily for the benefit of stock owners, but that its terms are broad enough to protect employees and passengers who are injured as a result of stock being struck by trains.

In some of the Illinois decisions the duty of the company to fence and the liability in case of failure is spoken of as absolute, but it has exceptions. In *Bischof v. Ill. S. R. Co.* 232 Ill. 446, 450, 451, 83 N. E. 948, where a six-year-old boy wandered upon an unfenced track and was killed, it was held that the company was not liable. The court said:

"The duty to erect a fence suitable and sufficient to keep stock off from the railroad track is absolute, and if that duty is not fulfilled the passengers and employees may re-

cover damages occasioned by stock being on the track. The statute, however, does not require a railroad corporation to erect or maintain a fence suitable or sufficient to prevent persons of any age or degree of intelligence from going upon the track. The statutes of the different states vary somewhat, but no court has ever considered that any of them required a corporation to fence against persons who were capable of caring for their own safety or had sufficient age and discretion to understand the dangers attending upon going on a railroad track."

In *Ill. Cent. R. Co. v. Trowbridge,* 31 Ill. App. 190, a team of horses of the plaintiff broke away from the driver, ran upon the track, and was killed by a locomotive. In an action to recover for the damage it was held that the duty of using ordinary care rested upon the plaintiff and it devolved upon him to show such care in order to recover.

The exact question whether a passenger may recover for injuries caused as the result of a train striking an object other than a domestic animal at a point where the track is unfenced does not seem to have been decided. In *Ill. Cent. R. Co. v. Carraher,* 47 Ill. 333, an animal had fallen into a well in the right of way of defendant which was not fenced. It was held that the company could not be held liable on the ground of negligence in not fencing the right of way; that the act requiring railroad companies to fence their roads was only designed to protect the traveling community from accidents occasioned by stock getting upon the road, and to prevent damage to such stock from their liability to be run over and killed, and was not intended to extend their liability in such case.

In the latest Illinois case cited it was held that under the statute a railroad company is not required to build fences such as will keep small children off the track. The court said:

"The purpose of the statute is to fix a conclusive liability upon a railroad corporation for a failure to erect a fence sufficient to keep the stock off the track and to authorize a

recovery for damages resulting from such failure, together with attorney's fees; but we are unable to discover any valid ground upon which it can be said that a requirement to build a fence suitable and sufficient to turn stock imposes the duty to build a fence suitable and sufficient to prevent persons from trespassing on the track, although such persons may be of tender years." *Bischof v. Ill. S. R. Co.* 232 Ill. 446, 453, 83 N. E. 948.

No case has been cited and we have found none which holds that passengers or employees may recover damages against a railroad company on the ground that the track was unfenced when the collision and injury were caused by the presence of a person or an object like an automobile upon the track, and as we interpret the Illinois decisions construing the statute a recovery could not be allowed in this case if the action had been brought in that state. The Illinois statute, unlike that of Wisconsin, does not make the company liable for damages done to persons as well as animals for failure to fence the track.

Counsel for plaintiff claim that the fact that there was a collision and a derailment of the train raised a presumption of negligence. This claim is based on the theory that the carrier is required to provide vehicles and a roadbed for the conveyance of passengers without defects which can be discerned by the degree of skill and care required by a common carrier, and that when a passenger is injured by means of the instrumentalities used in the system of transportation there is a presumption of negligence on the part of the carrier.

This is a rule which has often been declared by the courts, for the reason that the means used in such transportation are peculiarly within the knowledge of the carrier, who is in a much better situation to explain the cause of the accident than the passenger. But in the instant case all the facts and circumstances relating to the accident were detailed in evidence produced by the plaintiff. There was no

defect in the roadbed or any of the instrumentalities used by defendant.

The trial court found, and we concur in the finding, that there was no negligence on the part of the motorman managing the train.   The accident was caused by an outside agency over which the defendant and its agents had no control.  Under the facts proven, if there was any presumption of negligence it was fully rebutted.  *Chicago C. R. Co. v. Rood,* 163 Ill. 477, 45 N. E. 238; *Sommerfeld v. C:, N. S. & M. R. R.* 173 Wis. 191, 180 N. W. 847; *Spencer v. C., M. & St. P. R. Co.* 105 Wis. 311, 81 N. W. 407; *Thomas v. P. & R. R. Co.* 148 Pa. St. 180, 23 Atl. 989; 3 Hutchinson, Carriers (3d ed.) sec. 1412.

*By the Court.*—Judgment affirmed.