Alfred Krueger, Appellant, v. Guy A. Richardson and Walter J. Cummings, Receivers of Chicago Railways Company et al., Appellees.

Gen. No. 42,831.

206

Heard in the third division of this court for the first district at the October term, 1943. Opinion filed May 18, 1945. Released for publication June 8, 1945.

IRVING G. ZAZOVE and LOUIS B. GOLDBERG, both of Chicago, for appellant; IRVING G. ZAZOVE, of Chicago, of counsel.

FRANK L. KRIETE, ERWIN H. WRIGHT and ARTHUR J. DONOVAN, all of Chicago, for appellees; WILLIAM J. FLAHERTY, of Chicago, of counsel.

Mr. Justice Lupe delivered the opinion of the court.

This is a suit for damages for personal injuries received by plaintiff while a passenger on defendants' street car. At the close of plaintiff's evidence the court directed a verdict finding defendants not guilty. Judgment was entered thereon. Plaintiff brings this appeal. In a prior appeal in this case the judgment was reversed and the cause remanded because of error in denying plaintiff a change of venue. (314 Ill. App. 492.) Plaintiff alleges in his amended complaint that on July 8, 1939, the defendants were engaged in business as common carrier and as such constructed, managed, operated and controlled a street car along Halsted street at or near 26th street in Chicago, Illinois; that the street car was equipped with divers electric boxes, fuses and wiring for operating and propelling the same; that the interior of the street car contained seats and benches for the use of passengers; that the defendants owed the duty to all passengers to keep, equip, maintain and control said street car and equipment so that the same would not be a source of danger to passengers nor subject them to electric shocks or fires; that they owed passengers the duty to exercise the highest degree of care consistent with the practical operation of said business and mode of conveyance; that plaintiff was a passenger on defendants' street car; that the defendants knew or should have known that other vehicles might run into, strike, or collide with the same, and it was the duty of the defendants so to place the fuse box and electric equipment, and so to equip electrically the interior and seats, that any collision with another object or vehicle would not unavoidably strike the fuse box and other electrical equipment, mechanism, or wiring and cause an explosion in the interior of said car.

The specific and general acts of negligence alleged are that the defendants disregarded their duty by negligently permitting the fuse box to be so attached

to the car as to expose it to unnecessary and unavoidable danger if another vehicle or object came in contact with it, and that defendant negligently made connection from the main electrical power through the interior of the car and seats and that the same became a source of danger to the passengers who were seated on said seats, including the plaintiff, and that the defendants negligently ran and operated connections and wiring through the interior and seats, and that the seats became unavoidably charged with a high voltage electricity which subjected passengers sitting thereon, including the plaintiff, to unnecessary and unavoidable danger of receiving an electric shock; and that defendants failed in their duty properly to run such wires, in that they ran them in close proximity to the seats so that said wires would become unavoidably charged with electricity and set aflame if any object came in contact with the fuse box; that the defendants negligently failed to insulate and protect the wires so that they would not cause an explosion in the interior of the car; and that defendants failed and neglected to furnish plaintiff and other passengers a safe place to sit in said car. That while plaintiff was such a passenger and sitting on one of the seats in the car under defendants' sole control, the seat became suddenly electrically charged and caught fire, the exact cause thereof being to the plaintiff unknown; that an explosion in the interior of the car caused the seat to become electrically charged and set on fire, the cause of which also was unknown to the plaintiff. That one Frank Biondo operated his truck too close to said street car in such a way as to come in contact with the street car and that as a direct and proximate result of defendants' acts of negligence, while plaintiff was in the exercise of due care, there was a sudden explosion in the interior of the street car and the seats and divers parts of the car became electrically charged and a sudden flame appeared in the street car which dangerously

and permanently injured plaintiff. Plaintiff sought damages in the sum of $25,000.

The second count of the amended complaint averred that plaintiff was a passenger for hire on one of defendants' street cars; that all the machinery, electrical devices, wiring, controller and fuse box used in operating the street car were in the exclusive control of the defendants; that plaintiff occupied a seat in said street car and was in the exercise of due care; and that while plaintiff was so seated there was an explosion and flames from an unknown cause, which gave plaintiff an electric shock which seriously and permanently injured plaintiff, etc.

Defendants filed their answer denying the material allegations of the amended complaint and each count thereof.

The defendant Frank Biondo was dismissed out of the case on motion of plaintiff.

The plaintiff contends that the second count of the amended complaint alleges general negligence and that the evidence presented made a clear case for the application of the *res ipsa loquitur* maxim; that the legal presumption of negligence of the defendant arose from the undisputed evidence in behalf of plaintiff; that as defendant offered no proof to overcome that presumption the court erred in directing a verdict for defendants.

The question presented on this appeal is whether or not the trial court committed error in directing a verdict for defendant at the close of plaintiff's evidence.

In an action at law tried by a jury the law is well settled that on a motion to direct a verdict the power of the trial court is limited strictly to determining whether there is or is not evidence legally tending to prove the facts alleged, and if the evidence for plaintiff tends to establish a cause of action, a trial court has not the right to direct a verdict for defend-

ant. (*Myers v. Northwestern Elevated R. Co.*, 318 Ill. 24.)

A motion to direct at the close of plaintiff's evidence is in the nature of a demurrer to the evidence, and the testimony so demurred to, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. (*Capelle v. Chicago & N. W. Ry. Co.*, 280 Ill. App. 471; *McCune v. Reynolds*, 288 Ill. 188.)

It is equally well settled that the action of a trial court in directing a verdict at the close of plaintiff's proof is presumptively correct, and the burden is on the plaintiff to overcome that presumption, and it is for the plaintiff to point out evidence from which the jury could reasonably have found in his favor under one of the counts of his declaration. (*Kelly v. Fox*, 318 Ill. App. 481, 488.)

Plaintiff argues that since his evidence and that of his witnesses must be taken as true against the motion for a directed verdict, he made out a prima facie case, and that the court erred in directing the verdict. It therefore becomes necessary that we examine the testimony which applies to plaintiff's case.

It appears from the evidence that plaintiff, in the early morning of July 2, 1939, was riding in defendant's southbound Halsted street car in Chicago, Illinois, as a fare passenger. As the street car approached 26th street, just before or as it stopped for the intersection, an automobile scraped or bumped into the side of the street car, and immediately thereafter an explosion occurred in the controller at the rear of the car, which sounded like a bolt of lightning, and flames enveloped the back end of the car. Bolts of electricity began shooting from the rear to the front of the car and back to the rear. The front-end controller also exploded and began to blaze. Bolts of electricity shot from the ceiling around the lamps to the floor and went along the seats and walls of the car.

Passengers became panic stricken, some falling to the floor, a woman jumped out of the window and another woman and two men, including the plaintiff, were electrically shocked. Plaintiff received an electric shock to his leg, back, and side while he was seated by a window about the middle of the car. Plaintiff testified that he heard an explosion and saw a flash of light that appeared to be in front of his face, which blinded him, and that he was rendered unconscious; that his hat, tie and shirt, and the seat of his trousers were left with brown marks, holes, and burns; that the street car was burning and the fire had to be extinguished by the fire department. He then testified as to his injuries and the extent thereof, which we do not deem necessary to consider for a decision on this appeal.

Another witness called on behalf of plaintiff was Charles Cebeatis, who testified that he was one of the passengers in the street car at the time and was seated on the east side of the car on one of the long seats at the rear when an automobile hit the car, and that he saw the accident in question. He said the accident occurred at about 4 o'clock in the morning, at which time the street car was half filled with passengers; that the first time he observed anything unusual on the street car was when he got to the place of the occurrence; that at the time of the occurrence the car was in motion and was about to either go or to start and that the automobile hit the street car and there was a big burst of fire on the rear end of the street car on the platform and that it made a lot of noise; that at the time this occurred the people in the street car started running toward the front of the car; that the entire platform was all aflame, and that those people, including the conductor, who were on the platform ran off, and that the flames were shooting all around; that as the people were running toward the front end of the street car a fire broke out there and the people then ran back in the street car and that all of a sudden

there was a strong current breaking in the street car
from one end of the car to the back and fire was going
up and down; that people were falling down, and that
he fell on the floor of the car; that all of a sudden the
street car went dark; that it took about a minute from
the time he saw the first explosion on the rear platform
until he saw the explosion on the front; he was unable
to testify how long after the explosion he saw the cur-
rent in the street car; the current, he testified, ap-
peared about five feet from the floor toward the front
and back; that it was like a terrific flame and it was
all over the car.

He further testified that the scraping of the car was
on the left side of the street car; that it was a light
scraping; that after he got out of the car he noticed the
street car was in flame, and that the back end of the
car was on fire and that the fire department came and
extinguished it.

On cross-examination, he testified that the seats in
the car were of straw cane type; that the bottom of
the seats as well as the back were made of the same
material, and that the floor of the car was constructed
of wood; that the ceiling, it appeared, was of the same
construction; that he imagined there was some wood
and iron both on the side of the car; that the only
iron inside of the car would be the seat foundations
and the handles on the seat, and that the lighting of
the car was from overhead lights in the ceiling.

He further testified that, at the time of the scraping,
the street car was not moving very fast, it was al-
most at a standstill, and that the car was at its regu-
lar stopping place at 26th street. He further said
that he was unable to say whether or not the sound
appeared as though it was metal scraping against
metal, that it was a scraping sound, a noise of some
kind; that he saw the automobile. In describing the
current, the witness testified the sparks were coming
from both ends of the car, that it touched the sides

thereof, and that the sparks were shooting like roman candles through the entire street car.

Mrs. Ruth Rubin was called by the plaintiff and testified that she was a passenger in the street car at the time of the occurrence in question; that she heard a crash, a bump, on the side of the car, and saw then one end of the car burst into flames; that she was directed by the conductor to get out of the car; that she was knocked up against the seat and that her back was hurt; that some person that was sitting alongside of her jumped out of the window; as she was moving toward the front end of the car it burst into flames; that the first flame that she noticed was like a bolt of lightning; that both ends of the car were in flames; that she became unconscious, and when she came to she was lying in the street.

On cross-examination she testified that she was seated in one of the seats that accommodate two persons, and that she was sitting on the side nearer to the aisle; that there was nothing unusual about the street car; that it was a regular street car, nothing unusual about it, and that the seats were made of cane; that the street car stopped after it was hit; it seemed to be in the middle of the block; that the street car was hit hard; that the bump was on the left side toward the rear; with that it started to burst into flames at the back and as she went toward the front the front platform burst into flames; both ends of the car were on fire, and that she was trapped in the middle of the car; that there may have been flames shooting from the front end of the street car, shooting all the way to the back, but that she was so busy trying to get out she could not say; that she could not remember if the lights went out in the car; that she did not know when the flames ended. She further testified that she did not receive an electric shock.

Plaintiff's evidence showed that he was a passenger in one of the defendant's southbound Halsted street cars and that at the time of the injury he was

in the exercise of due care, when an automobile either scraped or bumped into the left rear side of the street car, dislodging a fuse box of the street car at about the point on the street car which received the force of the impact; that immediately thereafter there occurred an explosion in the rear end of the car which, as the witnesses described, sounded like a bolt of lightning and enveloped the back end of the car; that bolts of electricity began shooting from the rear to the front of the car and back again to the rear, and that about that time the front-end controller exploded and began to burn, and that plaintiff, while sitting on one of the seats in the car, received electric shocks from which he suffered burns and other injuries.

In order to ascertain liability on the part of defendant we must determine whether or not the defendant was guilty of negligence. Defendant owed to plaintiff, as one of its passengers, the highest degree of care consistent with the practical operation of its business. (*West Chicago St. R. Co. v. Tuerk*, 193 Ill. 385.) The carrier should do all that human care, vigilance and foresight can reasonably do, consistently with the mode of conveyance and the practical operation of the road. (*Pittsburgh, C. & St. L. R. Co. v. Thompson*, 56 Ill. 138; *Chicago, P. & St. L. R. Co. v. Lewis*, 145 Ill. 67.)

While it is the duty of a street car company toward its passengers to exercise the highest degree of care consistent with the mode of conveyance adopted and the practical operation of the business, yet it is also the rule that the company is not an absolute insurer of the safety of its passengers against possible danger from a collision. (*Grubczak v. Chicago Rys. Co.*, 242 Ill. App. 384, 488; *Coulter v. Illinois Cent. R. Co.*, 264 Ill. 414, 420; *Holler v. Chicago City R. Co.*, 209 Ill. App. 140.)

The rule requiring carriers of passengers to exercise the highest degree of care consistent with the mode of conveyance adopted and the practical

operation of the business, infers the duty to exercise the highest degree of care in furnishing cars which are safe and 'which are provided with proper appliances. (6 Cyc. of L. & P., 621; 10 C. J. 958.)

Plaintiff argues that the proof is conclusive of the fact that the injury was caused by some defects in the mechanical equipment of the car, as the evidence shows that the explosion occurred in the controller at the end of the car, and, as the equipment was the proximate cause of the injury and was wholly and exclusively under the control of defendant, only one deducible inference is reasonable, that the equipment on the car was either negligently installed or was negligently maintained and operated. He further contends that, because of such conclusive inference, this is a *res ipsa loquitur* case.

The doctrine of *res ipsa loquitur* may be stated thus: When a thing which has caused an injury is shown to be under the management of the party charged with negligence and the accident is such as in the ordinary course of things will not happen if those who have such management use proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from the want of proper care. (*Chicago Union Traction Co. v. Giese*, 229 Ill. 260; *Feldman v. Chicago Rys. Co.*, 289 Ill. 25, 34.)

The burden placed upon the carrier by law of explaining away presumptive negligence in the injury to a passenger exercising ordinary care while being transported, is well set forth in the case of *Arado v. Epstein*, 323 Ill. App. 194, at page 199, wherein the court cited with approval the statement by Mr. Justice Goodwin, in *Bolger v. City of Chicago*, 198 Ill. App. 123, 125 (cert. den. id. xii):

"It is a very ancient and salutary principle of law, that where one has charge or management of a thing in connection with which an accident happens, which

in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of proper care; that in case of such an accident the duty of explanation is thrown upon those having charge of the thing, particularly when information concerning the thing itself is within the particular or peculiar knowledge of the defendant.''

Other Illinois cases in which that principle has been applied are *Harper v. Owen H. Fay Livery Co.*, 177 Ill. App. 138, 140 (affirmed 264 Ill. 459); *Fugett v. Murray*, 311 Ill. App. 323, 327; *Belding v. Belding*, 358 Ill. 216, 220; *Cope v. Air Associates, Inc.*, 283 Ill. App. 40, 43, 44 (app. den. id. xiv); *Swanson v. S. S. Kresge Co.*, 302 Ill. App. 455, 466.

There can be no question that plaintiff sustained his injuries by reason of electric shock while a passenger in defendant's street car and that the agencies causing said shock were under defendant's control and management.

A jury, lacking the explanation required of defendant by law, might have concluded from the evidence and the reasonable inferences it might draw therefrom, that had that care, foresight and vigilance been used by the defendant which would have anticipated that an automobile might either scrape the side of a street car or run into the same at or near where the fuse box was lodged, and that the same might or could have disarranged or dislodged the fuse box, which might cause the electrical disturbances and bring about injury to plaintiff, and had the defendant taken precautions which would have prevented the liberation of high voltage electricity and its pervading the seats and interior of defendant's street car, the plaintiff would not have received his injuries. The jury might also have concluded, in absence of expla-

nation, that the escape of the electric current may have been brought about by reason of the location, construction, installation, insulation, inspection or maintenance of the wiring, or other electrical appliances or equipment on the street car, or by defendant's failure properly to maintain the same.

The law requires of common carriers the doing of all that human care, vigilance, and foresight can reasonably do, under the circumstances and in view of the character of the mode of conveyance adopted, reasonably to guard against accidents, *and against consequential injury,* and if they neglect so to do they are to be held strictly responsible for all consequences which flow from such neglect.

The collision between the automobile and the street car was not the proximate cause of the injury to plaintiff. If may have been a concurrent cause or one of many causes that brought about the ultimate injury to plaintiff. The law is well settled that if there were concurrent causes that brought about the injury to plaintiff, defendant owing to plaintiff the highest degree of care consistent with the practical operation of its road, would not be excused from liability. The evidence shows that the street car was electrically charged; that the floor and the seat upon which plaintiff was sitting became charged with electricity and burned holes in the seat of his trousers. This evidence raises a presumption of negligence under the doctrine of *res ipsa loquitur.* Common carriers such as street railways are aware that collisions occur between automobiles and street cars, and that street cars come in contact with other objects.

While the carrier is not an insurer for the absolute safety of the passenger, it does, in legal contemplation, undertake to exercise the highest degree of care to secure the safety of the passenger. The care required of the carrier applies alike to the safe and proper construction of its cars, its equipment,

and the road, and the employment of skilful and prudent operators and the faithful performance by them of their respective duties. (*Chicago & A. R. Co. v. Byrum,* 153 Ill. 131; *Chicago, B. & Q. R. Co. v. Mehlsack,* 131 Ill. 61; *Chicago & A. R. Co. v. Pillsbury,* 123 Ill. 9; *Galena & C. U. R. Co. v. Fay,* 16 Ill. 558.)

As to the machinery and cars furnished for the carriage of passengers, the passengers must rely solely on the carrier, and can do nothing to insure their personal safety. For that reason, the carrier, in this respect, is obligated to the highest reasonable and practical skill and diligence. The safety of passengers requires a strict and rigid observance of this rule against all carriers. The carrier must omit no care to discover and prevent dangers to passengers that is reasonable and practical. Public security demands such duty of the carrier at all times and under all circumstances. (*Chicago & A. R. Co. v. Pillsbury,* 123 Ill. 9, 23.)

Defendant contends in view of the fact there was no evidence that there was anything wrong with the location, construction, installation, insulation, inspection or maintenance of the fuse box, wiring, or electrical equipment on the street car or that it was not standard equipment such as is in general use in street cars in Chicago and elsewhere, that the only reasonable conclusion that could be arrived at was that the electrical disturbance which resulted in injury to plaintiff was brought about by an automobile coming in contact with the street car, and it argues that the doctrine of *res ipsa loquitur* does not apply where an accident is caused in whole or in part by an instrumentality over which the party sought to be charged has no control. With this contention we cannot agree.

All of the cases cited by defendant are distinguishable from the instant case. If plaintiff had been struck by the automobile that ran against the car, or,

if the impact of the auto with the street car had caused injury to the plaintiff by a severe jar or jolt, or by throwing him off the car or on to the floor, the authorities relied on by defendant would be applicable. In the instant case the injury was caused by an appliance or instrumentality exclusively under the control of defendant, the common carrier, which distinguishes the instant case from those relied on by defendant.

It is next contended that when specific negligence is charged, its proof is not aided by *res ipsa loquitur,* and that it must be affirmatively proved.

It is well settled that the doctrine of *res ipsa loquitur* applies where general negligence is charged, but it has no application where specific negligence is relied upon. Where one charges specific acts of negligence the law puts upon him the duty of proving it. (*Chicago Union Traction Co. v. Giese,* 229 Ill. 260; *O'Callaghan v. Dellwood Park Co.,* 242 Ill. 336.) As a part of the allegations of the complaint charges general negligence, the evidence in this case was sufficient to throw upon the defendant the burden of rebutting the negligence alleged. In the case of *Arado v. Epstein,* 323 Ill. App. 194, the court quoted from *North Chicago St. R. Co. v. Cotton,* 140 Ill. 486, 495, saying:

" 'Even if it be admitted that the presumption is one of negligence generally and not of any specific negligence, we think it sufficient to throw upon the defendant the burden of rebutting the specific negligence alleged.' In other words, the knowledge of the facts being possessed only by the defendant, it must reveal them and show that it is not guilty of the specific negligence charged, or verdict must go against it."

Nor was it necessary for the plaintiff to prove all the allegations of the complaint.

In *Arado v. Epstein*, 323 Ill. App. 194, at page 201, the court said:

"It is not necessary in actions ex delicto to prove all the allegations of the declaration. If plaintiff makes out a cause of action by proving the material allegations he is entitled to recover even though there be other averments of the declaration which are not proved." (Citing cases.)

It therefore follows that plaintiff was not required to prove the specific acts of negligence as alleged but they had a right to rely upon the proof and with the reasonable inferences from the evidence to establish a prima facie case of general negligence. This we feel plaintiff did.

 It is argued by defendants that the evidence shows that a force or instrumentality which was not under the control of defendant knocked off the fuse box which controlled the voltage and that it cannot reasonably be said that such evidence shows or tends to show that the accident could not have happened without the negligence on the part of the carrier. They further argue that it is common knowledge that the voltage carried in the primary wires or cables is controlled by a fuse box or a transformer before it enters the electrical appliances where it is to be applied, and when such fuse box or transformer is damaged or disarranged the control of the high voltage is removed and its unrestricted flow will naturally result in an overloading of the appliances and an electrical disturbance of more or less intensity, depending upon the voltage, will be liberated. We cannot agree that such technical facts are matters of common knowledge. These facts and their application to the particular installations in question are especially within the knowledge of defendants herein.

From the evidence in this case we feel that defendants should have been called upon to explain what caused their street car to become electrically charged, causing the injury to plaintiff. The knowledge thereof was possessed by defendants and not by plaintiff, as defendants had control and management of the agencies that caused the injury to plaintiff. The mere fact that an automobile either scraped or came in contact with the side of the car, dislodging or disarranging a fuse box would not of itself excuse defendants from liability without some showing or explanation on their part that the electrical disturbances causing plaintiff's injuries came about through no neglect or omission of duty on the part of defendants.

Under the doctrine of *res ipsa loquitur,* the plaintiff having shown that he was a passenger in the exercise of due care, and that he was injured in the car of the defendants by some instrumentality wholly under the control and management of the defendants, a prima facie case of negligence on the part of the defendants was established, and the burden of proof was upon the defendants to show that the accident was without their fault.

For the reasons hereinabove given, the judgment of the superior court of Cook county is reversed and the cause is remanded for further proceedings not inconsistent with the views above expressed.

*Reversed and remanded.*

Burke, P. J., and Kiley, J., concur.