## MATSUMOTO v. CHICAGO & N. W. RY. CO.

No. 9388.

Circuit Court of Appeals, Seventh Circuit.

May 24, 1948.

Rehearing Denied June 14, 1948.

Drennan J. Slater and Lowell Hastings, both of Chicago, Ill., for appellant.

Edwin L. Bennett and Robert J. Rafferty, both of Chicago Ill., for appellee.

Before KERNER and MINTON, Circuit Judges, and DUFFY, District Judge.

KERNER, Circuit Judge.

In its appeal defendant seeks to reverse the judgment of the District Court ordering it to pay to plaintiff damages in the sum of $4,250. From a jury verdict of $5,000 the court ordered a remittitur of $750. Defendant moved for a directed verdict at the conclusion of plaintiff's evidence and again at the conclusion of all evidence. It likewise moved for judgment non obstante veredicto. All motions were denied, and its appeal is predicated upon the grounds that the denial of these motions constituted reversible error.

Plaintiff's complaint is based upon a personal injury received while she was a paying passenger on one of defendant's trains which was running from Chicago toward Oshkosh, Wisconsin, and under the control of defendant and its agents. The complaint alleges that defendant was duty bound to exercise the highest degree of care toward its passengers; that it failed to do this; that as a result, in or near Eden, Wisconsin, defendant negligently decreased the speed of the train, suddenly and without warning, and operated it with a sudden and violent lurch or jerk; that as a result plaintiff was thrown from her position in a passenger car and injured. Defendant's answer denied the allegation of negligence and denied that plaintiff was injured as a direct result of the alleged acts of negligence set out in the complaint.

Miss Matsumoto and a physician testified on behalf of plaintiff, while defendant called four witnesses, all of whom were its employees on the train in question, in its defense. In view of the nature of the case, a recapitulation of the testimony of the witnesses, especially that of plaintiff and the brakeman who were in the same car at the time of plaintiff's injury, seems essential. From the testimony it was established that the train involved was running between Chicago and Ishpeming, Michigan; that it left Chicago at 4:10 P. M. on Saturday, August 31, 1945, which was the Labor Day week-end; that the train was powered by two diesel units and carried twelve coaches;

that plaintiff rode in car No. 3411 which was fourth from the head of the train; that the normal capacity of the train was 900 passengers; that it carried approximately 1400 passengers; that plaintiff was unable to get a seat in the coach proper; and that she rode in the powder room where she was able to sit intermittently. From photographs of the car which were submitted as exhibits we note that the powder room was, to one facing the engine, on the left of the aisle and to the front of the car. It was furnished with two chairs, a vanity set, and a wash stand.

Plaintiff's testimony was that during the period complained of she was standing with her back to the window and facing the door of the powder room; that she was about two feet from the wall to her left, which was constructed of metal; that the wash basin was to her left, while the chairs and the vanity set were to her right; that she was injured by an "awful jolt" which came without warning and which "slammed [her] against the [left] wall." She was knocked unconscious and thereafter failed to remember anything until revived. In describing the jolt with reference to the train's direction, she testified that it was more violent than the type experienced in the usual stop; that it came from the direction of the engine, and that it did not come from a sidewise direction; that her injuries were in the area of the upper right cheek bone; that as a result of her injuries she had to submit to two operations; and that at the time of the trial she suffered occasional numbness of the injured cheek.

Defendant submitted evidence that the train in question was involved in a highway crossing accident at a point two miles north of Eden, Wisconsin. The crossing is at the grade level and from the panoramic and other photographs submitted as defendant's exhibits it is clear that it is a single track running in northwesterly and southeasterly directions; that there is an advance warning sign several hundred feet before the crossing; and that there was a white sign and a bell at the crossing. Defendant submitted further evidence that the engine's bell was ringing for some time be-

fore the crossing; that whistle warnings were sounded shortly before the train reached the crossing; that the engine's headlights, the one a standard, the other a Mars light which casts its beam in a figure eight rotary motion, were lighted at the time of the accident; that the crossing bell was ringing as the train approached; that the highway runs in a northerly and southerly direction at the crossing; and that after the engine passed the crossing, an automobile ran into the side of the first coach back of the engine. The force of the collision and the resulting concussion was such that the automobile in question was dragged off the highway where it became embedded between an embankment to the northwest of the highway and the train. The effect of this was such that as the balance of the train passed, several of the remaining cars, including car No. 3411 in which plaintiff was riding, and the automobile scraped against each other. Car No. 3411 as well as others was damaged. From defendant's photographic exhibits it is evident that the side door at the front of car No. 3411 was considerably scratched; that the two windows next to the door, the second of which was the powder room's, were broken; that the body of car No. 3411 was considerably scratched and that two other windows in the center at the end of the car were also broken.

The brakeman who was stationed in the aisle of car No. 3411 just outside the powder room at the time the automobile struck the train testified that he pulled the emergency brake shortly after the accident; that in regard to the plaintiff's injury he heard a noise; that he saw a sailor who was in the vestibule pass through the air from the left to the right side; that he saw the plaintiff behind him on the floor; that he then pulled the emergency brake some five or six seconds after hearing the noise and after seeing the plaintiff on the floor; that no violent jerk occurred after he pulled the emergency cord; (defendant's remaining three witnesses who were not in car No. 3411 likewise testified to the absence of a jerk

when the emergency cord was pulled); that the train was going at the rate of seventy to seventy-five miles per hour; that the emergency brakes stopped the train within three-fourths of a mile; that the regular utility brakes would have required a little over a mile to stop the train; that after application of the emergency brakes the train slowed from its speed of about seventy-five miles per hour to fifty-five or fifty miles per hour within five or six seconds.

It is apparent from the foregoing, and both parties recognized it in the trial court, that the alleged negligence of defendant was solely the result of what the brakeman did or did not do when he pulled the emergency cord. Defendant submitted evidence that it was exercising due care when the automobile operated by the third person ran into the train. Plaintiff concedes that the automobile in question collided with the train, and consequently she concentrates her argument on the effect of pulling the emergency cord on the train which was traveling at between seventy and seventy-five miles per hour.

■ Plaintiff contends that as a passenger on defendant's train the fact that she was violently thrown and injured by the violent jerking of defendant's train prima facie established her case and made applicable the doctrine of res ipsa loquitur.[1] The classic definition of the doctrine is that "when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care." San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 32 S.Ct. 399, 401, 56 L.Ed. 680. We are satisfied that the initial elements of the doctrine—the plaintiff was without fault, the train and the emergency brake were under the exclusive control of defendant, the injury complained of was outside of

---

[1] Plaintiff's allegation in her complaint that defendant operated its train with a violent jerk, we believe, supports the general allegation of negligence, and permits her to rely upon the doctrine of res ipsa loquitur.

the ordinary scope of operating a train—were present. But in view of defendant's two-fold explanation of the occurrence of plaintiff's injuries—first, that her injuries were caused by the wedged automobile which struck the train as it passed by and it was that which threw her from her position against the window and knocked her to the floor; second, that the application of the brake was made while plaintiff was unconscious in the aisle, and without a violent jerk—we must turn to the applicable State law to determine whether it was evidence of a sufficient nature to preclude the application of the doctrine.

 The applicable law is that of Wisconsin. In Dehmel v. Smith, 200 Wis. 292, 227 N.W. 274, the facts were that an elevator in a hotel dropped with a jerk or jar some eighteen inches to two feet below the first floor level. As stated by the court, Wisconsin follows the rule that the burden of proof is upon plaintiff in cases of res ipsa loquitur. It explained, however, that the application of the rule is such that upon plaintiff's proof setting up the doctrine, defendant must overcome the presumption of negligence established. If the defendant fails to do this, plaintiff aided by his presumption has lifted the burden. The court held that the defendant's showing that the elevator was in perfect repair was not enough, and the question was left to the jury to determine whether the failure of the defendant to show that he had exercised due care in the control was negligence. Cf. Rost v. Roberts, 180 Wis. 207, 192 N.W. 38. A recent and frank discussion of the doctrine as applied by the Wisconsin courts is set out in Koehler v. Thiensville State Bank, 245 Wis. 281, 288, 14 N.W.2d 15. There the court states that under this doctrine the inference of negligence may persist through the counterproof of defendant if it is of a character that need not be treated as a verity, and the jury may be permitted to weigh the plaintiff's inference against the defendant's testimony. True, the court does state that if the defendant's refutation, as may happen in cases of defective construction or machine maintenance, is such as to destroy the inference, then there is no jury issue. See

Senft v. Ed. Schuster & Co., 250 Wis. 406, 27 N.W.2d 464. Applying this rule to the instant case, we have on the one hand the inference of negligence, occasioned by the pulling of the emergency cord without warning to the passengers; on the other hand, there is testimony, not undisputed proof, that there was no negligence in the pulling of the emergency cord.

 In cases of this kind reasonable minds may differ upon the question of negligence. In such a situation, the question of negligence is a mixed question of law and fact for the jury to decide. M Gurty v. Transcontinental & Western Air, 7 Cir., 167 F.2d 405; Lutzenberger v. Milwaukee Electric R. & Light Co., 224 Wis. 44, 47, 271 N.W. 409; and Lazarus v. Friel, 331 Ill.App. 552, 73 N.E.2d 647. Whether plaintiff's injuries were caused by the unforeseen collision of the automobile with the side of the train, or whether they were caused by the application without warning of the emergency brakes which did or d d not cause the train to give a violent jerk, is unquestionably a matter to be determined from the probative value of the evidence. Defendant did offer evidence tending to show that it had discharged the duty of care imposed upon it, but on cross-examination of defendant's witnesses it was established that upon application of the emergency brakes all the air on the train goes on; that while reducers are thereby placed in operation the emergency brakes stop a train considerably faster than the regular brakes. Defendant made no offer to prove by way of expert witnesses that the application of emergency brakes on a train going seventy to seventy-five miles per hour does not cause it to violently jerk.

 Defendant argues that it can not be held liable for the brakeman's action in pulling the emergency cord unless some negligence on his part was shown. Waterman v. City of Detroit, 297 Mich. 85, 297 N.W. 81. See also Jones v. Columbus & Southern Ohio Electric Co., Ohio App., 75 N.E.2d 830. Both of these cases involved the sudden stopping of their vehicles by operators who were faced with the threat of an accident with a third party. In our case, the accident had occurred.

It had resulted from the negligence of a third party. It is clear that the cord was pulled not to avoid the accident. It was a factor in addition to the negligence of the third party which distinguishes the facts in the instant case from the cases noted above. Whether the cord was pulled to prevent derailment and the threat of a serious injury to all the passengers, or whether it was pulled without regard to the passengers and caused a violent jerk, is answered by testimony only, and not undisputed proof. Under the law common carriers are required to exercise all that human care, vigilance, and foresight can reasonably do to avoid accidents and consequential injury. Krueger v. Richardson, 326 Ill.App. 205, 218, 61 N.E.2d 399. Upon a consideration of the facts we cannot say as a matter of law that the defendant has rebutted the presumption of negligence on its part. Mulcairns v. City of Janesville, 67 Wis. 24, 29 N.W. 565; Dehmel v. Smith, supra; and Kaples v. Orth, 61 Wis. 531, 21 N.W. 633.

Smith v. Chicago, N. S. & M. R. R., 180 Wis. 259, 193 N.W. 64, and Letush v. New York C. R. R. Co., 267 Ill.App. 526, are cited by defendant for the proposition that plaintiff had the burden of proving that her injuries were proximately caused by its alleged negligence. We do not quarrel with such law, but we do question the applicability of these two cases here. In the former case plaintiff charged two specific acts of defendant's negligence— the operation of its train at an excessive rate of speed and its failure to fence its track. The court held that plaintiff failed to prove his two allegations of specific negligence. The case did not involve the doctrine of res ipsa loquitur. In the latter case the court held that under the undisputed evidence defendant carrier lifted its inference of negligence arising under the res ipsa doctrine. The evidence showed that plaintiff's injury occurred when the engineer braked his train in an attempt to avoid a collision with an unoccupied automobile resting on the track.

As previously noted, the question of whether defendant offered a satisfactory explanation of the cause of plaintiff's injuries so as to lift its presumption of negligence was properly a question of fact for the jury.

The judgment of the District Court is affirmed.

DUFFY, District Judge (dissenting).

Unless we have reached that stage in the development of the law of negligence that a railroad carrier is the insurer of the safety of its passengers, the judgment in this case should go for the defendant. Of course, the law in Wisconsin, as elsewhere, is that a carrier is not such an insurer. Ormond v. Wisconsin Power and Light Co., 194 Wis. 305, 216 N.W. 489.

Plaintiff was a passenger in one of the defendant's northbound, modern, streamlined "400" trains designed to travel at a rapid rate of speed. All of the equipment, including brakes, was in good working order and no claim of defective equipment was made herein. Immediately before she was injured plaintiff was standing in the powder room in Car No. 3411, which was the fourth car in the train. She was leaning against the window and facing the door adjacent to the aisle. The forward wall of the powder room was about two feet to her left.

After the Diesel unit engine had traveled past a grade crossing north of Eden, Wisconsin, an automobile traveling on the highway struck the first car of the train. To the north of the crossing a cut had been made in constructing the roadbed, leaving an embankment alongside the track. The wreckage of the automobile became wedged between the train and the embankment. The impetus of the train caused the twisted mass of wreckage to be carried along about 300 feet, striking and bumping against the steel cars of the train, damaging a number of them. The window against which the plaintiff was leaning in Car No. 3411 was smashed in, and other parts of the car were also damaged, including the front vestibule.

Plaintiff testified she felt an "awful jolt" and all of a sudden she was slammed against the wall (to her left). Plaintiff described the jolt as "quite a bit more violent than the usual stop." Plaintiff mentioned and apparently experienced only one jolt.

The brakeman, Olwin, was riding in Car No. 3411. He testified that as the train approached Fond du Lac, he cleared the front vestibule of passengers except for one sailor; that he was standing near the door of the powder room when he heard a noise; that he saw the sailor thrown in the air from one side of the vestibule to the other, and then, looking around, had seen plaintiff lying on the floor; that he smelled gasoline and surmised there had been a crossing accident; that he had sized up the situation and realized that a derailment might occur from debris getting under the wheels, and concluded that an application of the emergency brake was called for; that he proceeded on the "safety first" principle and pulled the emergency brake cord as a precautionary measure. As to the time element, the record discloses the following:

"Question: After you saw the sailor and after you saw her, what did you do? Answer: I pulled the emergency cord."

Later, on cross-examination, he estimated five or six seconds may have elapsed before he pulled the cord, which was enclosed in a container, by a protection cup over it.

The manner in which the brake cord was pulled is immaterial since the brakes, acting through regulators, are applied throughout the length of the train with the same force whether the cord is pulled lightly or otherwise, and such application cuts off the power from the engine. Four witnesses testified that no severe jolt resulted from the application of the emergency brakes. It is undisputed that after the brakes were applied the train continued to travel for approximately three-quarters of a mile before coming to a stop.

In view of such testimony, considered with the physical facts, how could there be any question of negligence for jury consideration? What did the brakeman do, or what duty did he fail to perform that constituted negligence? The majority opinion states: " * * * both parties recognized it in the trial court, that the alleged negligence of defendant was solely the result of what the brakeman did or did not do when he pulled the emergency cord." If the situation had been the same as hereinabove described and the brakeman, Olwin, a man of thirty-four years' experience on the railroad, had not pulled the emergency cord after realizing the danger of a derailment, and the plaintiff had been injured by reason of a derailment, plaintiff's counsel undoubtedly would be arguing that the defendant should be held liable for negligence because Olwin, realizing the situation, did not act to reduce the speed of the rapidly moving train. I have no doubt that a jury would have found the defendant negligent for such failure to act and that such a determination would be sustained if appealed. But here the majority agrees that the defendant was negligent because the brakeman did act. Since the manner in which he pulled the brake cord cannot be the basis of negligence, as hereinbefore described, and since, under Wisconsin law, one is not negligent if in an emergency he is compelled to act instantly to avoid injury, and takes such course as a person of ordinary prudence might reasonably take, even though it turns out not to have been the best or safest course, any finding of negligence herein must be based upon the theory that the brakeman should have given some kind of warning that he was about to pull the brake cord. Just what should Olwin have done to give such a warning? Should he have stepped to the door of the powder room and announced, "Ladies, I am going to pull the emergency cord to set the brakes"? Was he under some duty to have announced to the other passengers in the car that he was about to pull the brake cord? The answers are obvious. In my opinion there was no question of negligence for the jury.

The majority opinion discusses the doctrine of res ipsa loquitur and apparently relies upon it in holding the defendant herein was negligent. Whether such doctrine is applicable is again a question of Wisconsin law. The Wisconsin Supreme Court has stated that the doctrine of res ipsa loquitur creates a rebuttable presumption capable of being rebutted so as to leave no issue for the consideration of the jury. Klitzke v. Webb, 120 Wis. 254, 97 N.W. 901; Lillis v. Beaver Dam Woolen Mills, 142 Wis. 128, 124 N.W. 1011; Dehmel v. Smith, 200 Wis. 292, 227 N.W. 274. A distinction is also drawn where the ac-

cident is caused in whole or in part by an outside agency.

In Smith v. Chicago, North Shore and Milwaukee Railroad Co., 180 Wis. 259, 193 N.W. 64, a case where the plaintiff was a passenger upon defendant's train, the court said (page 267 of 180 Wis., at page 67 of 193 N.W.):

" * * * The accident was caused by an outside agency over which the defendant and its agents had no control. Under the facts proven, if there was any presumption of negligence, it was fully rebutted. * * *"

In Rost v. Roberts, 180 Wis. 207, at page 211, 192 N.W. 38, at page 40, the court said:

"Res ipsa loquitur is a doctrine which permits an inference of negligence from the mere proof of an injury or accident *where it appears that the injury or accident would not or could not have happened except for the negligent conduct of the defendant. * *"* (Emphasis supplied)

These cases indicate why the case of Dehmel v. Smith, supra, leaned upon heavily in the majority opinion is not applicable. In that case the injury occurred in an elevator and no outside agency contributed to the accident.

The Wisconsin case closest on its facts to the case at bar is Sommerfield v. Chicago, North Shore and Milwaukee Railroad Co., 173 Wis. 191, 180 N.W. 847. The plaintiff was a passenger in one of defendant's interurban trains. The glass in a window of one of the cars broke and plaintiff was injured thereby. Plaintiff claimed that the defendant was negligent in furnishing defective window glass or an imperfect sash and relied upon the doctrine of res ipsa loquitur. The jury found that the window was not broken by an object from the outside and judgment went for the plaintiff. The Supreme Court reversed saying (173 Wis. at page 195, 180 N.W. 847) that under the facts and circumstances shown the doctrine of res ipsa loquitur did not apply.

One must rely on pure speculation to conclude that the force which broke the window against which plaintiff was leaning had nothing to do with her injury. If plaintiff was not injured by that blow, she would have remembered the noise and the jar of the automobile impact, the breaking of the windows, the odor of gasoline, all of which occurred some seconds before the brake cord was pulled. In fact there is not a shred of evidence in the record that plaintiff was knocked to the floor by reason of the application of the brakes.

The statement in the majority opinion, "It is clear that the cord was pulled not to avoid the accident," is beside the point. As the twisted mass of wreckage of the automobile was being dragged along between the embankment and the swiftly moving train surely a real danger existed, recognized by the brakeman, that if the debris should get onto the tracks a derailment might occur. The brakeman's apprehension of danger was not just a figment of his imagination. I suppose we can take judicial notice that on the very day this case was argued before this court, the newspapers carried stories of a modern, high-speed, stream-lined train on another railroad being run into by an automobile, resulting in a derailment causing the loss of life of at least two railroad passengers, and the serious injury of many others.

In my opinion the judgment for the plaintiff should be reversed.